[No. 42676-1-I.  Division One.  March 15, 1999.]
HOUSING AUTHORITY OF THE CITY OF SEATTLE, *Respondent*,
v. ANTHONY D. SILVA, *Appellant*.

*Hong T. Tran* of *Northwest Justice Project*, for appellant.

*Diane M. Luke* and *Faye Chess-Prentice*, for respondent.

COLEMAN, J. — Anthony Silva appeals the judgment against him in an unlawful detainer action, contending that his landlord, the Seattle Housing Authority (SHA), did not provide him with proper notice of his eviction and did not satisfy Seattle's just cause eviction ordinance, SEATTLE MUNICIPAL CODE (SMC) 22.206.160(C). Silva also contends that the SHA unlawfully discriminated against him by refusing to reasonably accommodate his disability. We find that the SHA satisfied the jurisdictional requirement of proper notice but did not comply with the ordinance's just cause provision. Therefore, we conclude that Silva is entitled to remain in possession, and we reverse.

## FACTS

Anthony Silva resides in a public housing complex owned by the SHA. In accordance with federal regulations, Silva's rental agreement provides that his tenancy may be terminated only for "serious or repeated breaches" of his material obligations under the agreement.

In July 1994, the SHA served Silva with a notice stating that he had engaged in disruptive behavior in violation of his rental agreement and demanding compliance with the agreement or surrender of the property within 10 days. The July 1994 notice indicated that Silva had "agreed to seek help with the issues that are going on with [him,] and stated that there [has] been some confusion." SHA subsequently referred Silva for mental health assessment, monitoring, and other services.

In November 1994, Silva received a second 10-day notice

to comply or vacate for his failure to cooperate with a mandatory roach spray. In 1995, SHA again referred Silva for monitoring, noting that Silva was mentally disabled and that his behavior was negatively affected by his heavy drinking.

In September 1997, Silva received a third 10-day notice for verbally harassing another tenant and a child. Silva subsequently received a fourth 10-day notice on October 13 for being abusive and intoxicated and for breaking a door off its hinges. An SHA community manager later referred Silva for chemical dependency counseling.

In December 1997, Silva left his bathroom sink running for several hours, damaging his unit, two other units, and the management office. That night, when the resident manager spoke to Silva about the problem, Silva was incoherent and appeared intoxicated. The SHA issued Silva a 30-day notice terminating his lease. The notice summarized the incidents that had provoked the four prior 10-day notices to comply or vacate, stating, "Despite numerous conferences, verbal and written notifications; You have continued to display behavior which threatens to be dangerous, d[e]structive and unreasonably interferes with other residents. You have not [co]mplied with previous 10 day notices, confer[e]nces, referrals for treatment. . . . You have habitually failed to comply [with] the Seattle Housing Authority SHA 50 Dwelling Lease."

After Silva failed to vacate within the time period provided by the termination notice, the SHA commenced unlawful detainer proceedings. At a show cause hearing, Silva argued that the SHA had not complied with state and local notice requirements and had unlawfully discriminated against him by refusing to reasonably accommodate his disability. The court commissioner rejected Silva's arguments and issued a writ restoring possession to the SHA, which was stayed pending Silva's motion to revise. On revision, the Superior Court upheld the commissioner's ruling

and lifted the stay. Silva posted a bond to stay execution of the writ pending this appeal.

## ISSUES

Statutory Notice

■ ■ Silva contends the trial court lacked jurisdiction over the unlawful detainer action because he was not given proper notice of his eviction. The unlawful detainer statutes create a special, summary proceeding for the recovery of possession of real property. *See Housing Auth. v. Terry*, 114 Wn.2d 558, 563, 789 P.2d 745 (1990), (citing *Wilson v. Daniels*, 31 Wn.2d 633, 643-44, 198 P.2d 496 (1948)). The statutes are in derogation of the common law and thus are strictly construed in favor of the tenant. *Terry*, 114 Wn.2d at 563. The statutes permit a landlord to commence eviction proceedings based upon certain tenant breaches or violations but require the landlord to provide the tenant with proper notice. RCW 59.12.030(3)-(5), (7). Failure to comply with the notice requirement defeats the court's jurisdiction over the action. *See Terry*, 114 Wn.2d at 564 (citing *Sowers v. Lewis*, 49 Wn.2d 891, 894, 307 P.2d 1064 (1957)); *Kessler v. Nielsen*, 3 Wn. App. 120, 123, 472 P.2d 616 (1970).

■ Prior to the commencement of any action based upon the tenant's breach of a lease covenant, the tenant must be given notice of an opportunity to perform the covenant and avoid eviction. RCW 59.12.030(3) (requiring three days' notice for a default in rent); RCW 59.12.030(4) (requiring 10 days' notice for breach of any other covenant); *Terry*, 114 Wn.2d at 564. Here, Silva received several 10-day notices that provided him with the opportunity to cure his lease violations and avoid eviction, but he repeatedly failed to comply with the requirements of his rental agreement. Nevertheless, Silva contends the SHA could not commence an unlawful detainer action without giving him another opportunity to comply, relying on our Supreme Court's decision in *Terry*. In *Terry*, the Everett Housing Authority sent

a termination notice to a disabled tenant who had repeatedly violated a series of protection orders that a neighbor had obtained against him. *Terry*, 114 Wn.2d at 561. The court held that the notice did not satisfy the statutory requirement, but rejected the argument that application of the requirement would defeat any action brought against a tenant who repeatedly breaches a lease covenant. Noting that the tenant in *Terry* had no opportunity to correct his violation before his tenancy was terminated, the court stated:

> The question whether a landlord's efforts to evict under the statute may be permanently frustrated is not properly before the court at this time. Because of the deficient notice, Mr. Terry was not given an initial opportunity to correct his behavior. The Legislature has provided for a tenant to have *at least* one opportunity to correct a breach before forfeiture of a lease under the accelerated restitution provisions of RCW 59.12.

*Terry*, 114 Wn.2d at 568-69 (footnote omitted). Contrary to Silva's assertions, *Terry* does not preclude termination of a tenancy where, as here, the tenant was given several opportunities to correct his violation.

Silva further relies on the recent decision in *Sullivan v. Purvis*, 90 Wn. App. 456, 966 P.2d 912 (1998) to argue that his prior 10-day notices were insufficient to confer jurisdiction over the action. However, the landlord in *Sullivan* had provided numerous informal notices of noncompliance and not a perform or vacate alternative as required under RCW 59.12. *Sullivan*, 90 Wn. App. at 460. The court held that the citations for noncompliance did not constitute proper notice, concluding, "[I]t is irrelevant how often or forcefully [the tenant] was informally notified of alleged breaches of his lease." *Id.* We find that SHA's prior service of formal 10-day notices to comply or vacate satisfies the jurisdictional requirement.

Just Cause Requirement

Silva next argues that his notice did not satisfy the

requirements of Seattle's just cause ordinance, SMC 22.206.160(C). We agree. Silva's lease was terminated because he had "habitually failed to comply" with his lease obligations, causing four disturbances over a three and a half year period. Under SMC 22.206.160(C)(1)(d), a landlord has just cause to evict a tenant who has habitually failed to comply with the material terms of his lease only if the problems result in three 10-day notices within a 12-month period. The ordinance prohibits evictions or terminations without just cause and provides a defense to any eviction or termination proceeding. *See* SMC 22.206.160(C)(1), (5). Because the problems with Silva's tenancy resulted in only two 10-day notices within a 12-month period, the SHA failed to comply with the requirements of this provision.

Because we find that Silva is entitled to remain in possession, we do not address the issues raised by his counterclaim. We reverse the decision of the trial court and remand with instructions to dismiss the complaint.

GROSSE and ELLINGTON, JJ., concur.