[No. 44140-0-I.  Division One.  January 10, 2000.]
ELAINE CARLSTROM, *Respondent*, v. DAVID A. HANLINE, *Appellant*.

*George Fields*, for appellant.

*Paul Battaglia*; and *David Hancock* of *Smith Smart, P.L.L.C.*, for respondent.

APPELWICK, J. — After a show cause hearing, the trial court granted a writ of restitution in favor of landlord finding that eviction of tenant was not retaliatory nor in breach of the Just Cause Eviction Ordinance. Tenant argues that the lease is inherently ambiguous, and that the hearing is unconstitutional because it violates his due process rights and right to a jury trial. As a matter of law, landlord properly evicted tenant after the termination of the lease. We affirm the trial court.

## FACTS

David A. Hanline leased a room located in a Seattle rooming house from Properties Northwest on October 2, 1997. Elaine Carlstrom, d/b/a Carlstrom Properties, purchased the property from Properties Northwest sometime in November. On November 26, 1997, Carlstrom and Hanline entered into a residential rental agreement. Paragraph one specified a term commencing on October 2, 1997, and terminating on April 1, 1998. However, paragraph one did not specifically calculate the number of months. Paragraph fourteen designated $200 as security deposit. Paragraph 16 of the lease provided that: "$200.00 deposit is non-refundable if tenant moves out within first 6 months."

During the tenancy Hanline complained to Carlstrom about housing code violations. Hanline sent Carlstrom a letter on March 4, 1998, complaining about a malfunctioning furnace. In the letter, Hanline indicated that the

furnace was not in working condition between February 11 and 18. He also complained to the Seattle Department of Construction and Land Use (DCLU) about the housing code violation. Hanline requested a $60.00 rent refund for himself and the other tenants in the building. He provided the tenants with information regarding tenants' rights.

Carlstrom informed Hanline that his lease was due to expire on April 1, 1998. Hanline disputed this contention and complained to DCLU. On March 31, 1998, DCLU informed Carlstrom that the notice to terminate did not comply with Seattle's Just Cause Eviction Ordinance (JCEO, Seattle Municipal Code (SMC) 22.206.160C). DCLU explained that Carlstrom's reason for terminating the lease—expiration of the lease—was not just cause and ordered that the notice be rescinded.

On April 5, 1998, Carlstrom served Hanline with a second eviction notice. This notice informed Hanline that the lease would terminate on April 30, 1998. The notice stated that the reason for termination was that "[t]he owner and/or immediate family needs the unit and there is no comparable vacant unit available in the house." Hanline was the sole remaining tenant in the rooming house and Carlstrom says she planned to use the entire house for her son. Hanline complained again to DCLU. The DCLU informed Carlstrom that verification of the stated reasons for termination was needed.

Hanline did not vacate the property on April 30. On May 4, Carlstrom served Hanline with a summons and complaint for unlawful detainer claiming that the premises were rented on a month-to-month basis. Carlstrom also obtained an order to show cause regarding writ of restitution that was served on Hanline on May 22, 1998. Hanline filed his first amended answer and counterclaims on May 26, 1998, claiming that Carlstrom (1) violated the JCEO, (2) retaliatory eviction, and (3) constructive wrongful eviction. Hanline filed a Jury Demand on May 28, 1998.

At the June 1, 1998, show cause hearing, King County Superior Court Commissioner Scott Reiman heard argu-

ments from the parties and granted a writ of restitution in favor of Carlstrom and judgment against Hanline for attorney's fees and costs. Commissioner Reiman found that (1) the eviction was not retaliatory, (2) there were no factual issues requiring trial assignment, (3) the lease was not ambiguous, and (4) Seattle's JCEO did not bar the eviction action.

On June 8, 1998, Hanline filed a motion for reconsideration of the commissioner's ruling, but did not obtain an order staying the writ of restitution pending reconsideration. On June 8, 1998, Hanline vacated the premises. Hanline's motion for reconsideration was denied.

## ANALYSIS

▮ An appellate court reviews questions of law de novo. *State v. McCormack*, 117 Wn.2d 141, 143, 812 P.2d 483 (1991), *cert. denied*, 502 U.S. 1111 (1992).

### Ambiguity

As a threshold matter, we must determine what the lease agreement executed on November 26, 1997, provides and whether it is ambiguous. Paragraph one of the agreement contains a commencement date of October 2, 1997, and a duration provision specifically identifying the lease termination date as April 1, 1998. The section identifying the term by number of months was not completed. Paragraph 16 provides that the "$200 deposit is non-refundable if [the] tenant moves out within [the] first *6 months*." (Emphasis added.)

▮ Whether a written instrument is ambiguous is a question of law for the court. *McGary v. Westlake Investors*, 99 Wn.2d 280, 285, 661 P.2d 971 (1983) (citing *Ladum v. Utility Cartage, Inc.*, 68 Wn.2d 109, 411 P.2d 868 (1966)). An ambiguity will not be read into a contract where "it can reasonably be avoided by reading the contract as a whole." *McGary*, 99 Wn.2d at 285. Where a written instrument contains words that are ambiguous, but "taken as a whole are plain and unambiguous, the meaning should be deduced

from the language alone . . . ." *Universal/Land Constr. Co. v. City of Spokane*, 49 Wn. App. 634, 637, 745 P.2d 53 (1987) (citing *Grant County Constructors v. E.V. Lane Corp.*, 77 Wn.2d 110, 121, 459 P.2d 947 (1969)).

Ambiguities in a lease agreement must be construed against the one who prepares the lease agreement. *Mc-Gary*, 99 Wn.2d at 287. Furthermore, if a lease is ambiguous, the court will adopt the interpretation that is most favorable to the lessee. *Allied Stores Corp. v. North W. Bank*, 2 Wn. App. 778, 784, 469 P.2d 993 (1970).

Hanline argues paragraph 16 establishes a six-month lease beginning on November 26, the execution date in the preamble, not beginning October 2, the commencement date in paragraph 1. He says that Carlstrom did not own the premises until sometime in November, and therefore she cannot rely on the months of October and November as establishing part of the six-month rental period. Hanline says that because the lease expired six months after November 26, the evictions in April were invalid.

Hanline cites *Rainier National Bank v. Inland Machinery Co.*, 29 Wn. App. 725, 631 P.2d 389 (1981) in support of his argument that the lease was ambiguous. *Rainier* was an appeal of a summary judgment order holding that Rainier's previously perfected security interest had priority over a subsequent purchase money security interest. The party granting Rainier the security interest entered into a rental agreement for the period between November 13, 1978, to April 13, 1979, or five months. Handwritten into the agreement, however, was a comment that the rental was for four months. *Id.* at 726. The court said there was an intrinsic ambiguity in the documents themselves and therefore allowed parol evidence to determine the intent of the parties. *Id.* at 730.

Here, unlike *Rainier*, there is no inherent ambiguity. The additional terms in paragraph 16 relate to the $200 security deposit found in paragraph 14. The six-month provision is used solely to measure whether the deposit is

refundable. This term may have proven more beneficial for the tenant with respect to return of his security deposit, since when read with the earlier commencement date of October 6, it would provide for earlier eligibility for return of the deposit. While this provision potentially benefited the tenant, it had no affect upon and created no ambiguity as to the term of the lease or the expiration date.

The lease agreement unambiguously states that the lease's termination date is April 1, 1998. The additional term requiring that the tenant remain for six months is not in contradiction with the termination date. Hanline first leased the premises on October 2. The period between October 2 and April 1 is six months. Even construing the lease agreement's terms against Carlstrom, there is no ambiguity.

Just Cause Eviction

Hanline argues that the JCEO requires the landlord to identify the reasons and provide facts supporting the decision to evict the tenant. Hanline says that improper notice undermines the court's jurisdiction. Hanline also argues that he was evicted in retaliation of his complaints to the DCLU. Carlstrom argues that Hanline's lease had expired and therefore neither the JCEO nor the rebuttable presumption applies. We agree with Carlstrom.

The Residential Landlord-Tenant Act of 1973 (RLTA) applies because the dispute involves a residential lease. RCW 59.18. Hanline and Carlstrom entered into a tenancy for a specified period of time. The lease specified the termination date as April 1, 1998. RCW 59.18.220 says "[i]n all cases where premises are rented for a specified [period of] time, by express or implied contract, the tenancy shall be deemed terminated at the end of such specified time." As a matter of law, the lease was terminated on April 1, 1998.

A tenant holding possession of leased property after the expiration of the term is guilty of unlawful detainer. RCW 59.12.030. When real property is leased for a specified period of time, the tenancy "shall be terminated without no-

tice at the expiration of the specified term or period." RCW 59.12.030(1). Hanline retained possession of the premises until June 8, 1998, well after the April 1, 1998 termination date. Hanline's holdover in the premises was illegal. A tenant cannot exclude the landlord "after the termination of the rental agreement and . . . . [a]ny landlord so deprived of possession . . . may recover possession of the property and damages sustained by him . . . and reasonable attorney's fees." RCW 59.18.290.

Because the lease was terminated as a matter of law, there is no question of just cause eviction or retaliatory eviction. RCW 59.18.250 creates a rebuttable presumption of retaliatory eviction where a landlord evicts within ninety days after a tenant complains to a government agency. But because Hanline's lease had expired, the presumption does not apply. Failure to comply with notice requirements under the JCEO defeats the court's jurisdiction. *Housing Auth. v. Silva*, 94 Wn. App. 731, 734, 972 P.2d 952, 954 (1999). Here, however, no notice is required under JCEO because the tenancy had already terminated by operation of law. The JCEO is entirely consistent with the RLTA in this regard. It applies to evictions of "tenants," which are defined as persons occupying a residence "pursuant to a rental agreement." SMC 22.204.210.

■ The case is complicated by a March 31, 1998, DCLU letter to Carlstrom informing her that "just cause" was required to terminate the lease. There is no indication that DCLU had a copy of the lease when dispensing its opinion. Carlstrom's second notice to Hanline terminated the tenancy on April 30, 1998. Carlstrom filed a certification under the JCEO alleging giving notice of just cause. But based on the lease, the DCLU's letter to Carlstrom is wrong. The second notice to Hanline was not necessary. The JCEO does not apply where a lease has terminated as a matter of law.[1] The tenancy expired on April 1, 1998, and Hanline's holding of the premises thereafter was illegal.

---

[1] Counsel for plaintiff adds to the confusion in paragraph two of the complaint for unlawful detainer which alleges the premises were rented on a month-to-

### Jury Trial

Hanline claims that he was improperly denied a jury trial. Hanline argues that the commissioner erred by failing to assign the case for trial because his right to a jury trial under article I, section 21 of the Washington Constitution is lost. Carlstrom says that although Commissioner Reiman failed to direct the parties to proceed to trial, Hanline retains his jury trial right because he could simply request a trial date in the usual complaint and answer manner.

■ Washington does not provide for a jury trial in unlawful detainer show cause proceedings. A show cause hearing is not the final determination of the rights of the parties in an unlawful detainer action. In this proceeding,

> The court shall examine the parties and witnesses orally to ascertain the merits of the complaint and answer, and if it shall appear that the plaintiff has the right to be restored to possession of the property, the court shall enter an order directing the issuance of a writ of restitution . . . .

RCW 59.18.380. Show cause hearings are summary proceedings to determine the issue of possession pending a lawsuit. *Meadow Park Garden Assocs. v. Canley*, 54 Wn. App. 371, 375, 773 P.2d 875 (1989).

In *Meadow Park*, the tenant disputed the landlord's allegations that the lease was breached. The issue on appeal was whether a residential tenant in an unlawful detainer action who disputed allegations of breaching her lease was entitled to a jury trial at the initial stage of the unlawful detainer action. *Id*. at 372. The court held that a jury trial was unavailable at a show cause hearing because it was a summary proceeding: "To hold otherwise would substantially disrupt the judges' traditional function of resolving motions." *Id*. at 375. The court in *Meadow Park* also stated that the summary proceedings were adopted to expedite

month basis. The court notes the complaint was a standard, fill-in-the-blank form and the defendant denied the allegation. The record contains no other evidence in support of the reference to a month-to-month tenancy, to which the just cause eviction standards apply.

the decision as to who should possess the property while an unlawful detainer action is pending. *Id.* at 376.

Hanline argues that *Meadow Park* does not apply because he is seeking a separate jury trial, apart from the show cause hearing. He says *Tuschoff v. Westover,* 60 Wn.2d 722, 375 P.2d 254 (1962) is the more analogous case. In *Tuschoff,* a landlord brought an unlawful detainer action against the tenant to determine a dispute over delinquent payments in rent of real property. *Tuschoff* is distinguishable on two grounds. First, the case involved an unlawful detainer action under RCW 59.12.030, not RCW 59.18.380 that was enacted in 1973 as part of the Residential Landlord-Tenant Act of 1973. Second, in *Tuschoff* the trial court proceeded to trial despite plaintiff's action under the unlawful detainer statute. The trial court's action was a nullity because it prematurely tried a case where a summary proceeding was in order. Here, the case was disposed in a summary proceeding, not at trial. Therefore, *Meadow Park,* not *Tuschoff,* is the most analogous case.

Carlstrom concedes that Hanline may bring any action for retaliation or wrongful eviction. Hanline was not precluded of his right to a trial by jury on these issues under RCW 59.18.380. But, Hanline has no right to jury trial at the summary proceedings. *Meadow Park* disposed of this issue because it directly involves summary proceedings under RCW 59.18.380.

Due Process

Hanline argues that the summary proceeding available under RCW 59.18.380 is unconstitutional. He claims the show cause proceeding does not provide a full and fair opportunity to be heard because direct and cross-examinations are unavailable. Carlstrom did not address this issue in her brief.

■ The Fourteenth Amendment of the United States Constitution provides that no state shall "deprive any person of life, liberty, or property, without due process of law . . . ." The Washington Constitution contains an identical clause. Procedural due process in Washington

requires a meaningful opportunity to be heard. *Olympic Forest Prods. v. Chaussee Corp.*, 82 Wn.2d 418, 421, 511 P.2d 1002 (1973) (citing *Boddie v. Connecticut*, 401 U.S. 371, 377, 91 S. Ct. 780, 28 L. Ed. 2d 113 (1971)). The scope of due process involves a balancing of "the private interest to be protected, the risk of erroneous deprivation of that interest by governmental procedure, and the government's interest in maintaining such a procedure." *Krein v. Nordstrom*, 80 Wn. App. 306, 310, 908 P.2d 889 (1995) (citing *Soundgarden v. Eikenberry*, 123 Wn.2d 750, 768, 871 P.2d 1050, 30 A.L.R.5TH 869 (1994)). Summary proceedings do not violate the constitutional guarantee of due process. *Nordstrom*, 80 Wn. App. at 311.

■ RCW 59.18.380 provides opportunity for complaint and answer. The court also shall "examine the parties and witnesses orally to ascertain the merits of the complaint and answer." RCW 59.18.380. A hearing must be scheduled with at least six days notice to the defendant.

Hanline alleges that the statutory procedure prejudiced him. He says that the short notice prevented the preparation and introduction of witnesses at the hearing. For example, Hanline was unable to introduce testimony from a prior resident of the premises. However, this witness' declaration was available for the hearing and his live testimony would also be available at trial. Hanline received adequate notice and opportunity to hire counsel. Although Hanline claims that a 20-minute hearing is unfair because it is too short, he cites no specific examples of arguments he failed to raise because of the time constraints. The show cause hearing is not unconstitutional.

Therefore, the holdover is illegal and the superior court properly issued the writ of restitution and judgment for unlawful detainer in favor of Carlstrom. Accordingly, Carlstrom should be awarded attorney's fees.

Affirmed.

BAKER and ELLINGTON, JJ., concur.