228 P.3d 1289 (2010)
TACOMA RESCUE MISSION, d/b/a Jefferson Square Apartments, Respondent.
v.
James STEWART, Appellant,
No. 38109-5-II.
Court of Appeals of Washington, Division 2.
March 10, 2010.
Publication Ordered April 14, 2010.
As Corrected April 27, 2010.
Stephen John Parsons, Northwest Justice Project, Tacoma, WA, for Appellant.
Everett Allen Holum, Everett Holum PS, Tacoma, WA, for Respondent.
VAN DEREN, C.J.
¶ 1 James Stewart appeals a trial court's ruling granting a writ of restitution following an unlawful detainer action by the Tacoma Rescue Mission (TRM), the owner of his federally subsidized public housing. Stewart argues that the trial court erred in failing to dismiss because TRM provided him inadequate notice under his lease and under the federal regulations specifying the notice due any tenant the landlord seeks to evict.[1] We agree that the landlord failed to provide the notice required under the lease and reverse and remand for dismissal.

FACTS
¶ 2 TRM owned and operated the Jefferson Square Apartments, a Tacoma apartment building consisting of 42 single occupancy studio apartments for homeless people. To *1290 rehabilitate units at the Jefferson Square Apartments, TRM accepted funding from the United States Department of Housing and Urban Development (HUD) under the Section 8[2] Moderate Rehabilitation Program for Single Room Occupancy Dwellings for Homeless Persons (SRO program).[3]
¶ 3 When Stewart applied for residence at the Jefferson Street Apartments, he was a homeless veteran of the United States Navy. TRM approved his application and, on January 3, 2006, Stewart signed the lease and moved into an apartment. His rental agreement was for 12 months, beginning January 3, 2006, and ending December 31, 2006, although his lease was apparently extended into 2007. In accordance with the Section 8 SRO program, Stewart paid roughly 30 percent of his social security disability income as rent. Under his lease, the total monthly rent was $434; THA paid $225 and he paid $209.
¶ 4 After he moved into his apartment, Stewart began behaving inappropriately. In 2006, Stewart threatened one neighbor, Mr. B., at "a site five or six blocks away" from the apartment building and Mr. B complained to TRM in writing. Clerk's Papers (CP) at 310. Another neighbor, Ms. B., complained repeatedly that Stewart played his television too loudly and that she could hear violent movies. She did not ask him to turn down the volume; instead, she tried to avoid him because of a previous incident in which she felt trapped and intimidated by him. Following the noise complaint, TRM issued a 10 day comply or vacate notice on January 12, 2007, stating, "You are in violation of community rule # 6. Please keep your Radio/TV down to a reasonable level." Ex. 10, at 2. In July 2007, again away from the apartment building, Stewart twice threatened Mr. M., another resident[4] of the Jefferson Street Apartments. Stewart frightened Mr. M. but did not physically assault him.
¶ 5 In 2007, TRM issued multiple 20 day "`no cause'" termination notices under RCW 59.12.030(2).[5] CP at 310. On July 31, 2007, the Fair Housing Center of Washington requested that TRM reasonably accommodate Stewart's limited ability to seek alternate housing and allow him to continue living at the Jefferson Square Apartments. TRM declined this request and issued its fourth 20 day "`no cause'" termination notice to Stewart on August 1, demanding that he vacate his apartment by August 31. CP at 310. TRM accepted Stewart's August 3 tender of August rent; but it declined his August 31 tender of September rent.
¶ 6 On October 9,[6] TRM served Stewart with a three day nuisance notice, alleging that he made excessive noise and threatened and frightened other tenants. On October 10, Stewart tendered both September and October's rent to TRM. TRM accepted rent for September because Stewart had resided at Jefferson Square during September; however, it did not accept the October rent. Based on Stewart's refusal to abide by the three day nuisance notice, TRM filed an unlawful *1291 detainer action under RCW 59.12.030(5).[7] TRM filed the complaint on November 1, 2007, and obtained an ex parte order directing Stewart to appear and show cause why he should not be evicted. Stewart's answer included affirmative defenses and a motion to dismiss for lack of subject matter jurisdiction.
¶ 7 A pro tempore commissioner denied Stewart's motion to dismiss. The commissioner also granted TRM's request for a writ of restitution but stayed execution to allow Stewart to file a motion for revision. The trial court denied Stewart's motion to dismiss, granted his motion for revision, and set the case for trial. Following trial, the trial court entered an order granting TRM a writ of restitution based on nuisance.[8]
¶ 8 Stewart appeals.

ANALYSIS

I. Standard of Review
¶ 9 We consider de novo the adequacy of a termination notice under a lease. See Duvall Highlands LLC v. Elwell, 104 Wash. App. 763, 771 n. 18, 19 P.3d 1051 (2001); Carlstrom v. Hanline, 98 Wash.App. 780, 784, 990 P.2d 986 (2000).

II. Unlawful Detainer Notice and Access to the Court's Jurisdiction[9]
¶ 10 Stewart argues that, because TRM's unlawful detainer notice was insufficient under his lease, TRM was precluded from maintaining an unlawful detainer action against him. He claims that TRM terminated his tenancy contrary to the lease's termination clause that required a specific termination date and specific grounds for termination. We agree.
¶ 11 The purpose of an unlawful detainer action is to resolve in a summary proceeding the right to possession of real property. Christensen v. Ellsworth, 162 Wash.2d 365, 370-71, 173 P.3d 228 (2007). A termination notice that fails to follow a lease's terms is ineffective to maintain an unlawful detainer action. See Gray v. Gregory, 36 Wash.2d 416, 418-19, 218 P.2d 307 (1950); Republic Inv. Co. v. Naches Hotel Co., 190 Wash. 176, 180, 67 P.2d 858 (1937); Comty. Invs., Ltd. v. Safeway Stores, Inc., 36 Wash.App. 34, 37-38, 671 P.2d 289 (1983). Therefore, "[p]owers of termination must be exercised strictly in the manner provided in the termination clause." 17 William B. Stoebuck & John W. Weaver, Washington Practice: Real Estate: Property Law § 6.76, at 437 (2d ed.2004).
¶ 12 Stewart's lease required the termination notice to "state the date the tenancy shall terminate." Ex. 6, at 5. But here, TRM's notice had no such date, instead demanding that he move out "within three (3) days of service of this Notice." Ex. 5.
*1292 ¶ 13 The lease also required TRM to "state the reasons for such termination with enough specificity to enable the resident to understand the grounds for termination."[10] Ex. 6, at 5. In such circumstances, a landlord must generally provide a termination notice that includes dates, times, locations, and the tenant's alleged victims so that the tenant can prepare a rebuttal to the landlord's accusations.[11]See Swords to Plowshares v. Smith, 294 F.Supp.2d 1067, 1068 n. 1, 1072-73 (N.D.Cal.2002); Cuyahoga Metro. Hous. Auth. v. Younger, 93 Ohio App.3d 819, 820-22, 825-26, 639 N.E.2d 1253 (1994); Hous. Auth. of the County of King v. Saylors, 19 Wash.App. 871, 872-74, 578 P.2d 76 (1978).
¶ 14 Here, the October 9 notice stated the following reasons for terminating Stewart's tenancy:
You and/or your guests have interfered with the peaceful enjoyment and use of neighboring tenants['] property, have engaged in unlawful activities on the premises, and/or you have committed waste on the premises to wit:
Since January 2006 and continuing to present, you and/or your guests played loud rap music and watched loud, violent movies after 10pm three to four times a week. The building requires that all noise be confined to the resident's apartment by 10pm. On January 1, 2007, you received a Ten-Day Notice to comply due to your loud radio/television; however, you have continued to make excessive noise. The loud noise interferes with the peaceful use and enjoyment of neighboring tenant[s'] property.
Since January 2006, you have repeatedly returned to the building from 1:00am to 4:00am and are loud, by yelling and playing loud music/t.v. and slamming doors, waking your neighbors from sleep. This behavior interferes with the peaceful use and enjoyment of their property.
Four of your neighbors have made official complaints about your threatening and intimidating behavior. You have threatened to assault neighbors who you have accused of flattening your tires on your van. You have also threatened to "knock the crap" out of a neighbor. Several of your neighbors have stated that they are afraid of you because of your threatening behavior. These tenants are not able to move because they are participants in a government program. This type of intimidation interferes with the peaceful use and enjoyment of your neighboring tenant[s'] property.
Ex. 5.
¶ 15 Stewart argues that TRM's notice "contains only vague and conclusory allegations about noise and threatening behavior and fails to state the reasons for the termination with enough specificity to enable him to prepare a defense." Br. of Appellant at 21. He points to its lack of dates, places, or alleged victims to demonstrate his inability to rebut TRM's case against him.
¶ 16 We agree that TRM's October 9 termination notice inadequately identified instances of Stewart's "threatening and intimidating behavior." Ex. 5. While it provided some level of detail in two of the four alleged complaintsone regarding his accusation that a neighbor flattened his tires and the other regarding his threat to "`knock the crap'" out of a neighboring tenantit vaguely alluded to these incidents, and he nevertheless cannot guess which of his many neighbors were "afraid of [him] because of [his] threatening behavior." Ex. 5. Stewart, by and large, claimed he did not know which specific incidents or behaviors formed the basis of TRM's lease termination. Because TRM failed to state specific grounds for termination or a date certain terminating his tenancy, TRM's notice failed to comply with Stewart's lease requirements and was insufficient *1293 to maintain an unlawful detainer action against him.
¶ 17 We reverse and remand to the trial court for dismissal.
¶ 18 A majority of the panel having determined that this opinion will not be printed in the Washington Appellate Reports but will be filed for public record pursuant to RCW 2.06.040, it is so ordered.
We concur: HOUGHTON and QUINN-BRINTNALL, JJ.
NOTES
[1] Because we agree with Stewart's first argument, we do not address his other claims, including the adequacy of the notice provisions under former 24 Code of Federal Regulations § 882.511 (2001).
[2] United States Housing Act of 1937 § 8, 42 U.S.C. § 1437f (2007).
[3] In exchange for these funds, TRM entered into a 10 year contract for housing assistance payments with the Tacoma Housing Authority to provide Section 8 rental assistance for homeless individuals in single room housing. Although the original contract ended in 2003, HUD renewed this contract annually and continued to send TRM monthly payments through the Tacoma Housing Authority for each occupied unit.
[4] We do not know the names of these individuals because the parties did not designate the report of trial proceedings on appeal. The trial court's findings of fact used only an initial.
[5] Under RCW 59.12.030(2), a tenant has committed an unlawful detainer

[w]hen he or she, having leased property for an indefinite time with monthly or other periodic rent reserved, continues in possession thereof, in person or by subtenant, after the end of any such month or period, when the landlord, more than twenty days prior to the end of such month or period, has served notice (in manner in RCW 59.12.040 provided) requiring him or her to quit the premises at the expiration of such month or period.
The TRM notices were dated April 9, 2007, June 6, 2007, and July 2, 2007 and August 1, 2007.
[6] Finding of fact 1.13 states that "[t]he October 9, 2007 notice was served on October 9, 2007." CP at 309. Conclusion of law 2.5 repeats this assertion. Despite the October 19 date on the declaration of service, we must take this unchallenged fact as a verity on appeal. Cowiche Canyon Conservancy v. Bosley, 118 Wash.2d 801, 808, 828 P.2d 549 (1992).
[7] Under RCW 59.12.030(5), a tenant has committed an unlawful detainer

[w]hen he or she commits or permits waste upon the demised premises, or when he or she sets up or carries on thereon any unlawful business, or when he or she erects, suffers, permits, or maintains on or about the premises any nuisance, and remains in possession after the service (in manner in RCW 59.12.040 provided) upon him or her of three days' notice to quit.
[8] TRM moved for dismissal on appeal because Stewart moved out of the Jefferson Square Apartments but our commissioner denied the motion and ruled that the appeal is not moot.
[9] Some cases speak of the trial court lacking jurisdiction to hear unlawful detainer actions, chapter 59.12 RCW, without adequate notice to the tenant. See, e.g., Christensen v. Ellsworth, 162 Wash.2d 365, 372, 173 P.3d 228 (2007); Hous. Auth. of the City of Everett v. Terry, 114 Wash.2d 558, 566, 789 P.2d 745 (1990); IBF, LLC v. Heuft, 141 Wash.App. 624, 632, 174 P.3d 95 (2007); Hous. Auth. of the City of Seattle v. Silva, 94 Wash.App. 731, 734, 972 P.2d 952 (1999). But under chapter 59.12 RCW, "[t]he superior court of the county in which the property or some part of it is situated shall have jurisdiction of proceedings under this chapter." RCW 59.12.050. Furthermore, superior courts have broad general jurisdiction over real estate disputes. See Wash. Const. art. IV, § 6; Young v. Clark, 149 Wash.2d 130, 133-34, 65 P.3d 1192 (2003). Thus, a superior court has jurisdiction to determine whether an unlawful detainer action may go forward. See RCW 59.12.050. The proper terminology is that a party who files an action after improper notice may not maintain such action or avail itself of the superior court's jurisdiction. See Nickum v. City of Bainbridge Island, 153 Wash.App. 366, 379 n. 9, 223 P.3d 1172 (2009). Here, we characterize the parties' arguments regarding jurisdiction accordingly.
[10] The general rationale behind requiring specific termination grounds is "`to insure that the tenant is adequately informed of the nature of the evidence against him so that he can effectively rebut that evidence.'" Hous. Auth. of King County v. Saylors, 19 Wash.App. 871, 874, 578 P.2d 76 (1978) (quoting Escalera v. New York City Hous. Auth., 425 F.2d 853, 862 (2d Cir.1970)).
[11] Because Washington courts infrequently address this issue, we look to persuasive authority in other jurisdictions.