[No. 36216-0-I. Division One. December 23, 1996.]

WHITE RIVER ESTATES, *Appellant*, v. KAREN HILTBRUNER, *Respondent*, CERRITOS INVESTMENT CORPORATION, ET AL., *Appellants*.

354

*James A. Oliver, Walter H. Olsen, Jr.,* and *Short, Cressman & Burgess,* for appellants.

*Joseph J. Ganz, Robert G. Nylander,* and *Cutler & Nylander,* for respondent.

COLEMAN, J. — Karen Hiltbruner, a secured party of a mobile home, sued the mobile home park owners, Cerritos Investment Corporation, and their manager, Anna Hwang, alleging that the Park unreasonably rejected her potential home purchasers. Hiltbruner prevailed following a jury trial and the Park appeals. The Park argues that as a secured party, Hiltbruner had no transferable or assignable rental agreement and that she failed to give the statutorily required 15-day advance notice of any intended transfer. We reject these claims because a secured party's relationship with the landlord is governed by the prior tenant's lease, which permitted assignments and because the Park waived its right to a 15-day notice by failing to reject the potential buyers on that basis. The Park also claims that the court allowed plaintiff to relitigate a back rent issue resolved by settlement in a separate unlawful detainer action. We hold that the settlement did not resolve this issue. Finally, the Park argues that the court erred by instructing the jury that it should consider emotional distress in calculating damages for claims brought under RCW 59.20.073. We hold that such dam-

ages are recoverable because the violation was in the nature of an intentional tort. We affirm.

## FACTS

In February 1992, the Park began a collection suit against Hiltbruner for unpaid rent on her mobile home. In May 1992, Hiltbruner filed cross claims in the collection suit against the Park for tortious interference, intentional and negligent infliction of emotional distress, and violations of the Mobile Home Landlord-Tenant Act (MHLTA), the Consumer Protection Act (CPA), the U.S. Civil Rights Act, and the Washington State Constitution.[1] In October 1992, the Park filed an unlawful detainer action. In November 1992, Hiltbruner and the Park reached an agreement in the unlawful detainer action whereby Hiltbruner paid back rent. A trial was subsequently held to resolve Hiltbruner's cross claims in the collection suit.

Before trial, the Park moved to exclude any evidence relating to the settlement agreement between Hiltbruner and the Park in the unlawful detainer action. That agreement stated that "[t]he sum of $6,465.00 is stipulated and agreed to be the amount of rent for Space 502[.]" The agreement also stated that "except as provided in this Agreement, [the parties] shall have all rights pursuant to law from this point forward[.]" The agreement distinguished those parts of the stipulation that were settled with and without prejudice: "[T]he parties shall dismiss their claims in the Unlawful Detainer Action without prejudice, except for the parties' claims for attorneys fees and costs . . . and except for any claims asserted by Cerritos for monies due through November 30, 1992, which claims shall be dismissed with prejudice."

Another document referred to at trial but not admitted into evidence stated that Hiltbruner was specifically not waiving any right to recover an overpayment. The parties

---

[1]Most claims were dismissed during the trial, and the jury was only instructed on the CPA and MHLTA claims.

disputed this letter's meaning. Hiltbruner claimed that she was retaining her right to pursue the facts underlying the back rent issue but that she paid the back rent to remain in the Park until her cross claims were resolved. The Park argued that this provision referred only to possible accounting errors. The court permitted Hiltbruner to pursue issues relating to the settlement agreement to the extent consistent with the settlement letter.

The following facts were adduced at trial. Hiltbruner purchased and resided in a mobile home in White River Estates Mobile Home Park from 1979 to 1987. White River Estates is owned by Cerritos Investment Corporation and managed by Anna Hwang. In 1988, Hiltbruner sold the mobile home to Deborah and Bret Brunelle. The sale was financed through a loan from Hiltbruner to the Brunelles. Under their agreement, Hiltbruner retained a security interest in the mobile home, which enabled her to repossess the home in the event of default by the Brunelles. White River approved the Brunelles' tenancy, and the Brunelles signed a lease with White River under which they paid monthly rent directly to the Park. The lease contained a standard provision regarding assignability:

> 17. ASSIGNMENT. This Rental Agreement shall be assignable by Tenant only to a person to whom Tenant sells or transfers title to the mobile home on the Mobile Home Lot, subject to the approval of Landlord after fifteen (15) days written notice by Tenant of such intended assignment. Landlord shall approve or disapprove of the assignment of this Rental Agreement on the same basis that Landlord approves or disapproves of any new tenant or mobile home. Tenant's assignee shall assume all the duties and obligations of Tenant for the remainder of the term of this Rental Agreement.

In early 1990, the Brunelles defaulted on their rental agreement. In November 1990, White River sent Hiltbruner a letter informing her that she was liable for the back rent owed by the prior tenants as the secured party

under RCW 59.20.074.[2] Hiltbruner and the Park had not entered into a separate rental agreement upon her repossession of the property. Hiltbruner testified that she called the Park's attorney to find out for what the Park was billing her. She testified that she never received an adequate response and that, despite her requests, she also never received a copy of the rental agreement between White River and the Brunelles. The parties disputed the amount of rent owed, and Hiltbruner paid no rent during this time.

The Brunelles moved out of the mobile home in January 1991, leaving the home substantially damaged. Hiltbruner spent the next few months repairing the home. Hiltbruner also attempted to sell the mobile home. Several potential buyers who made offers to Hiltbruner and whose offers Hiltbruner approved applied to the Park for approval to lease the mobile home. None were accepted.

At trial, the parties disputed why the Park had denied these potential buyers. Hwang testified that the Park applied a "brightline rule" screening criteria that included a first step of rejecting all potential buyers who had blemishes on their credit reports. Hwang testified that nearly every potential buyer failed the first step. Hiltbruner argued that the "brightline rule" did not exist because people with less than perfect credit reports were approved to lease other mobile home spaces in the Park. Hiltbruner presented evidence that the failure to sell her

---

[2]RCW 59.20.074 provides: "**Rent—Liability of secured party taking possession of mobile home.** (1) A secured party who has a security interest in a mobile home that is located within a mobile home park and who has a right to possession of the mobile home under RCW § 62A.9-503, shall be liable to the landlord from the date the secured party receives written notice by certified mail, return receipt requested, for rent for occupancy of the mobile home space under the same terms the tenant was paying prior to repossession, and any other reasonable expenses incurred after the receipt of the notice, until disposition of the mobile home under RCW § 62A.9-504. The notice of default by a tenant must state the amount of rent and the amount and nature of any reasonable expenses that the secured party is liable for payment to the landlord. The notice must also state that the secured party will be provided a copy of the rental agreement previously signed by the tenant and the landlord upon request."

home and the eviction suit by the Park caused stress in her family relationships, sleeplessness, and irritability.

Later in the trial, Hiltbruner sought to exclude the settlement agreement in the unlawful detainer action. The Park argued that the document should be admitted. The court reasoned that if the document were admitted, attorneys from both sides would have to testify as to the meaning of the document. The court excluded the document, believing that it would delay trial and confuse the jury.

The MHLTA instruction provided in part, "Any rental agreement shall be assignable by the tenant to any person to whom he sells or transfers title to the mobile home. . . . Consent to an assignment shall not be unreasonably withheld." Additionally, the court instructed the jury that it should consider emotional pain and suffering experienced or to be experienced in connection with violations of the CPA or the MHLTA in calculating damages.

The jury returned a special verdict form, finding the Park unreasonably withheld consent to the assignment under the MHLTA, and awarded Hiltbruner $35,000.

### ASSIGNABILITY OF RENTAL AGREEMENT

■ We first address whether the court erred in denying the Park's motion for judgment as a matter of law because Hiltbruner did not have an assignable rental agreement. The Park argues that because Hiltbruner was a secured party, she was not entitled to the protections of the MHLTA permitting tenants to assign and transfer their rental agreements freely. *See* RCW 59.20.073. The Park claims that a secured party has only a nonassignable month-to-month tenancy. Hiltbruner argues that the statute provides that her relationship shall be governed by the tenant's rental agreement, which permits assignment. *See* RCW 59.20.074(6). Whether the assignability statute applies to a secured party is a legal question subject to de novo review. *See Waste Management of Seattle, Inc. v. WUTC*, 123 Wn.2d 621, 627, 869 P.2d 1034 (1994).

■ ■ The central issue is whether Hiltbruner should have been permitted to recover under the MHLTA as either a tenant or a secured party with an assignable interest. The parties agree that Hiltbruner was a secured party, but disagree as to whether she was a tenant for purposes of the statute. RCW 59.20.030(8) defines a "tenant" as "any person, except a transient, who rents a mobile home lot[.]"

The MHLTA provides that any rental agreement is assignable by a tenant to any person to whom the tenant sells the mobile home. RCW 59.20.073(1). "The landlord shall approve or disapprove of the assignment of a rental agreement on the same basis that the landlord approves or disapproves of any new tenant, and any disapproval shall be in writing. Consent to an assignment shall not be unreasonably withheld." RCW 59.20.073(4).

The MHLTA does not, however, directly address the rights of a secured party attempting to assign a lease to someone to whom the secured party is selling a mobile home. But the Act does provide that a secured party who has a right of repossession is liable to the landlord for rent under the same terms as the tenant was paying before repossession. RCW 59.20.074(1). Additionally, if a secured party does become liable to the landlord for rent, "the relationship between the secured party and the landlord shall be governed by the rental agreement previously signed by the tenant and the landlord unless otherwise agreed, except that the term of the rental agreement shall convert to a month-to-month tenancy." RCW 59.20.074(6). The secured party and the landlord are not required to execute a new rental agreement. RCW 59.20.074(6).

The Park argues that Hiltbruner had nothing to assign because her tenancy was only month-to-month. This argument is unpersuasive. The statute specifically provides that the relationship of the secured party and the landlord is governed by the prior tenant's rental agreement except that the tenancy becomes month-to-month. And the

Brunelles' lease contained an assignment clause similar to the language of the statute. *See* RCW 59.20.073. While Hiltbruner's tenancy was month-to-month rather than for a year, she is still subject to the benefits of the Brunelles' assignment clause. *See Gillette v. Zakarison*, 68 Wn. App. 838, 842, 846 P.2d 574 (1993) (court found implied rental agreement assignable).

The Park argues that because RCW 59.20.050(1) grants tenants the right to a one-year lease, Hiltbruner's month-to-month interest could not be assignable. The Park notes that no prospective tenant waived their right to the one-year lease to step into Hiltbruner's month-to-month tenancy. While Hiltbruner, as a secured party, has only a month-to-month interest, as soon as she assigns it to a tenant, the tenant has a statutory right to a one-year tenancy. *See* RCW 59.20.050(1). While the Park correctly notes that one cannot assign more than one has, Hiltbruner can still assign her month-to-month interest, and by statute, the new tenant is entitled to a one-year tenancy. While the result may seem unique, it furthers the Act's goals of keeping tenants in the homes and providing them with stability.

The Park also argues that Hiltbruner had nothing to assign because any new tenants would have executed their own lease. But even prospective tenants of prior tenants assigning their leases would often execute new leases. *See Gillette*, 68 Wn. App. at 840-41 (potential buyers would have executed a new lease with the landlord). This argument is therefore unpersuasive.

Additionally, the Park contends that public policy does not support applying the assignability statute to secured parties because the Legislature contemplated that the secured party would not pay rent while it possessed and disposed of the collateral. But this contemplation would support just the opposite public policy: Secured parties who take possession, like tenants, should not have obstacles to selling their homes. The statute aims at enabling mobile homeowners to sell their homes even though

the homes are located on rental property. Secured parties should also be able to sell the homes easily for this reason. Under the Park's reasoning, park owners would be able to withhold consent unreasonably to any assignment such that the secured party would be forced to remove or abandon the home. This is exactly what the Act sought to prevent. We thus hold that as a secured party whose relationship is governed by the prior tenant's lease, Hiltbruner is subject to the protections of RCW 59.20.073.

■ Finally, the Park argues that Hiltbruner has no standing to assert rights under RCW 59.20.073 because the Park's rejections of Hiltbruner's buyers did not affect her. To have standing, a party must have a present, substantial interest, as distinguished from a contingent interest, and the party must show that it will benefit from the relief granted. *Primark, Inc. v. Burien Gardens Assocs.*, 63 Wn. App. 900, 907, 823 P.2d 1116 (1992). Hiltbruner had a substantial and direct financial interest in selling her mobile home. This argument thus lacks merit. A secured party governed by a tenant's lease permitting assignment is a tenant for purposes of RCW 59.20.073.

### 15-DAY NOTICE REQUIREMENT

We next consider whether the trial court erred in denying the Park's motion for dismissal and for judgment as a matter of law because Hiltbruner failed to comply with statutory and contractual provisions requiring 15-days' advanced notice of any intended transfer. Hiltbruner concedes that she did not comply with the notice requirements. She argues, however, that the Park has waived this issue because the notice requirement was not a basis for any of the rejections. We agree.

Under the MHLTA, a tenant who sells a mobile home in a park must notify the landlord in writing at least 15 days before the transfer. RCW 59.20.073. The failure to provide the requisite 15-day notice is grounds for the disapproval of the transfer. RCW 59.20.073(5).

The Park cites *Moolick v. Lawson*, 33 Wn. App. 665, 666-67, 655 P.2d 1185 (1982), for the proposition that Hiltbruner is estopped from claiming any benefits under the MHLTA. There, the court noted that because both parties violated the MHLTA—the landlord, by failing to provide written notice of termination, and Moolick, by failing to provide written notice that he would be vacating the park—both parties were estopped from claiming benefits under the Act. The court, however, held that in any event, Moolick failed to show damages. *Moolick*, 33 Wn. App. at 667. Relying on *Moolick*, the Park argues that because Hiltbruner ignored the provisions of the Act, she should be estopped from claiming any of its benefits. *See Moolick*, 33 Wn. App. at 667.

The Park did not assert this defense until trial. The waiver doctrine provides that once a party has relinquished a known right, the party cannot reclaim it without the consent of the adverse party. *McDaniels v. Carlson*, 108 Wn.2d 299, 308, 738 P.2d 254 (1987). The Park did not provide this as a basis for disapproving the assignments, and it has therefore waived this defense on appeal. Moreover, the provision states that failure to comply is a "grounds for disapproval," RCW 59.20.073(5); it does not state that failure to comply with the statute renders Hiltbruner's notification invalid. We hold that *Moolick* is not applicable because the Park waived its right to the 15-day notice defense.

## SETTLEMENT AGREEMENT

We now turn to whether the court erred in allowing Hiltbruner to relitigate claims that were previously resolved though a settlement agreement. The Park argues that the court erred in allowing Hiltbruner to relitigate the back rent issue and in excluding the settlement agreement. The Park claims that this evidentiary ruling precluded the Park from raising a valid defense to Hiltbruner's overpayment of rent claims, which the Parks

contends had been finally settled by the settlement agreement. Hiltbruner claims that the agreement did not preclude her from seeking to recover excessive charges and that the settlement agreement itself was properly excluded.

The settlement contains no language indicating that the back rent payment resolves all claims. Additionally, unlawful detainer is a very limited action, and counterclaims and setoffs are generally not permitted. *Heaverlo v. Keico Indus.*, 80 Wn. App. 724, 728, 911 P.2d 406 (1996). Here, Hiltbruner likely wished to settle the matter so that she would not be evicted. Moreover, the fact that her cross-claims were pending at this time and the fact that she still had not received an accounting for alleged back rent owed indicate that she did not intend to waive her right to contest the back rent payment at trial. Thus, we hold that the trial court properly concluded that the settlement agreement did not resolve the facts underlying the back rent issue.

The Park claims that the court erred in excluding the settlement agreement itself because: (1) the agreement disputed Hiltbruner's testimony that the Park was not entitled to back rent; (2) the court applied an impermissible double standard; and (3) the court's ruling was erroneous under ER 403.

First, while Hiltbruner testified that the Park was not entitled to back rent, Hwang was permitted to testify that she thought the issue had been resolved. Moreover, the agreement does not necessarily impeach Hiltbruner's testimony because it was subject to interpretation. Thus, the court did not abuse its discretion in finding that the agreement itself would shed no light on this issue.

Second, the Park correctly points out that the trial court's language is somewhat unclear. Before trial, the court stated that the agreement is ambiguous as to what it resolved but that Hiltbruner could still pursue her theories. During trial, however, the court stated, "Am I going to rule there was a settlement? I already ruled there

wasn't." But while the court's language is confusing, its rulings are consistent: Before trial, the court ruled that Hiltbruner could dispute the back rent issue because the settlement did not dispose of all claims. At trial, the court ruled that the settlement agreement was not admissible because it would only confuse the jury and because the court had already determined as a matter of law that the agreement did not resolve the claims. Thus, contrary to the Park's assertions, the court did not use an impermissible double standard.

■ Finally, the Park claims that the court abused its discretion under ER 403, under which the court may exclude evidence if its prejudicial effect outweighs its probative value. Admission is reviewed for abuse of discretion. *Carson v. Fine*, 123 Wn.2d 206, 223, 226, 867 P.2d 610 (1994). The trial court determined that the prejudicial effect of confusing the jury and delaying trial outweighed any probative effect—particularly when the court had already determined that the settlement agreement did not definitively resolve the back rent issue. No such abuse exists here.

### EMOTIONAL DAMAGES

We finally consider whether the trial court erred in instructing the jury to include emotional pain and suffering in calculating damages for claims brought under RCW 59.20.073. The Park argues that emotional pain and suffering damages are not available under the MHLTA because the MHLTA provides only for property damages and this claim sounds in contract. Hiltbruner argues that the Park has not properly preserved this issue for review. Alternatively, she argues that because emotional distress damages are recoverable upon proof of an intentional tort, she is entitled to recover.

■ We first consider Hiltbruner's preservation argument. At trial, the Park objected generally to the court's proposed instruction for mental and emotional pain and

suffering. The Park then, however, argued that such awards are not available under the CPA and made no mention of the MHLTA. While the Park's argument referred only to the CPA claim, the jury instruction to which it objected referred to both the CPA and the MHLTA claim. Moreover, we believe that the trial court understood the general nature of the Park's objection. We thus reach the merits of this issue.

The question is whether emotional distress damages are available under RCW 59.20.073 when the MHLTA does not explicitly authorize or prohibit emotional pain and suffering damages. The only MHLTA provisions referring to recoverable damages are RCW 59.20.210 and .220, which both refer to a landlord's failure to carry out repair duties. Despite the Park's argument that these provisions should limit the recovery in this case, they are not applicable. Moreover, the Park's argument that these damages are the only ones recoverable under the statute is unpersuasive, as there cannot be rights without remedies.

 The Park claims that when a statute is violated, a specific legislative mandate is needed to authorize emotional distress damages. *See, e.g., Washington State Physicians Ins. Exch. & Assoc. v. Fisons Corp.*, 122 Wn.2d 299, 317-18, 858 P.2d 1054 (1993). But no discovered case states that emotional distress damages are not authorized unless a statute specifically authorizes the award. *Cf. Fisons*, 122 Wn.2d at 321 (no emotional distress damages in CPA claim because not necessarily intentional behavior); *Dean v. METRO*, 104 Wn.2d 627, 640, 708 P.2d 393 (1985) (actual damages includes emotional distress damages).

Hiltbruner argues that because the common law has recognized emotional distress damages in landlord-tenant cases, this court should recognize them here. *See Nordgren v. Lawrence*, 74 Wash. 305, 308, 133 P. 436 (1913) (unlawful entry) and *McClure v. Campbell*, 42 Wash. 252, 256, 84 P. 825 (1906) (wrongful eviction). The Park claims that these cases have been overturned, as noted by Professor Stoebuck. In a section entitled, "Damages for Landlord's

Interference With Possession," Stoebuck states, "At one time, the state supreme court allowed damages for mental anguish, but the old decisions allowing this were overruled many years ago." 17 WILLIAM STOEBUCK, WASHINGTON PRACTICE, *Real Estate: Property Law* § 6.33 (1995) (citations omitted). In discussing its award of emotional damages, the *Nordgren* court stated only, "[M]ental suffering may be taken into consideration in assessing damages, where the same is a result of a wrongful act, even though there be no actual physical injury." *Nordgren*, 74 Wash. at 308. In support of his proposition that *Nordgren* was overruled, Stoebuck cites *Barnes v. Bickle*, 111 Wash. 133, 136, 189 P. 998 (1920), where the court held that no recovery was permitted for mental and physical distress when there was no invasion of the person or property to the plaintiff. Thus, while the parties make much of these cases, *Nordgren* and *Barnes* address emotional distress recovery in general and not specifically in the context of the landlord-tenant relationship.

The Supreme Court shed light on this issue in *Cherberg v. Peoples Nat'l Bank*, 88 Wn.2d 595, 602, 564 P.2d 1137 (1977). In discussing emotional damage awards based on a lease violation, the court, stated: "As a general rule a tenant may not recover such additional damages solely on the basis of breach of such a duty. . . . On the other hand, damages for mental anguish are available upon proof of an intentional tort." *Cherberg*, 88 Wn.2d at 602, citing *Barnes*, 111 Wash. 133; William Stoebuck, *The Law Between Landlord and Tenant in Washington*, 49 WASH. L. REV. 291, 350 n.271 (1974). Thus, the key inquiry is not whether this is a landlord-tenant case, but whether emotional distress damages are premised solely on a contract—the lease—or whether the violation is also in the nature of an intentional tort.

Hiltbruner argues that this case is like an intentional tort, and Washington courts have liberally construed emotional distress damages as being available upon proving an intentional tort. *Cagle v. Burns & Roe, Inc.*, 106

Wn.2d 911, 916, 726 P.2d 434 (1986). On the other hand, the Park argues that this case sounds in contract, and pain and suffering damages are generally not available for contract violations. *See Gaglidari v. Denny's Restaurants, Inc.*, 117 Wn.2d 426, 440-41, 815 P.2d 1362 (1991).

While we recognize that the Park's actions were in the nature of a contractual violation in that RCW 59.20.073 is largely codified in the Brunelles' lease, we believe that their actions were also in the nature of an intentional tort. We believe that the emotional harm to Hiltbruner was reasonably foreseeable and note that the statutory violation here is akin to the tort of interference with business relationships. Hwang was aware that Hiltbruner was attempting to assign her interest, she had knowledge of Hiltbruner's relationship with the prospective tenants, and she intentionally interfered with that relationship by unreasonably withholding her consent to the assignments, causing damage. *See Cherberg*, 88 Wn.2d at 602. As we recognize emotional distress damages based on this tort, *see Cherberg*, 88 Wn.2d at 606-07, we hold that such damages are also reasonably foreseeable under RCW 59.20.073. *See also Schwarzmann v. Association of Apartment Owners*, 33 Wn. App. 397, 404, 655 P.2d 1177 (1982) (state has recognized that mental anguish may result from intentional interference with property interests). We thus affirm Hiltbruner's award of emotional damages.

Hiltbruner has requested attorney fees on appeal. The prevailing party in an MHLTA action is entitled to reasonable attorney fees and costs. RCW 59.20.110. We therefore award Hiltbruner attorney fees on appeal.

Finally, we deny Hiltbruner's motion to strike appellant's reply brief, and have considered this brief in full in rendering this opinion.

Affirmed.

WEBSTER and Cox, JJ., concur.

Review granted at 133 Wn.2d 1009 (1997).