[No. 61639-1-I.   Division One.   May 11, 2009.]

JEAN LEDA ET AL., *Respondents*, v. ROBERT WHISNAND, *Appellant*.

70

*Scott R. Peterson*, *Gerald F. Robison*, and *Michael D. Kinkley*, for appellant.

*Larry M. Trivett*, for respondents.

¶1 Dwyer, A.C.J. — This is a residential landlord-tenant case. Jean and Steven Leda are Robert Whisnand's former landlords. Whisnand appeals from a judgment entered against him in an unlawful detainer action brought by the Ledas. Rejecting Whisnand's primary contention on appeal, we hold that he could neither renew his tenancy nor create a new tenancy by sending the Ledas an unsolicited rent payment after they served him with a 20-day notice to vacate. We also hold, however, that the superior court commissioner abused her discretion by refusing to allow Whisnand to present evidence supporting his other claimed defenses during the unlawful detainer show cause hearing. Accordingly, we reverse and remand for further proceedings.

I

¶2 Whisnand rented residential property from the Ledas for $800 per month. He rented on a month-to-month basis. There was no written lease.

¶3 On either January 30 or 31, 2008, Steven Leda posted a document entitled "NOTICE TO TERMINATE TENANCY" on the front door of the residence that Whisnand had been renting from the Ledas. The notice informed Whisnand that the Ledas were terminating his tenancy effective February 29, 2008. It was signed by the Ledas' attorney and dated January 31, 2008. In spite of this, Steven Leda filed a sworn affidavit stating that the notice had actually been posted on January 30. Regardless of

whether the notice was posted on the 30th or the 31st, on the same day that he posted it Steven Leda also sent a copy of the notice by first class United States mail to the address of the property that Whisnand was renting from the Ledas.

¶4 February passed. Whisnand removed neither himself nor his possessions from the property.

¶5 On March 1, 2008, the Ledas served Whisnand with a summons and a complaint for unlawful detainer. These pleadings were filed at the Snohomish County Superior Court on March 5, 2008.

¶6 On March 13, 2008, Whisnand filed a pro se pleading styled "NOTICE OF APPEARANCE AND ANSWER BY AFFIDAVIT."

¶7 The next day, the Ledas filed a motion for an order to show cause why the court should not issue a writ restoring their property to them. The same day, a commissioner of the court granted the Ledas' motion and ordered Whisnand to appear on April 1, 2008, and raise any defense as to why he should not be removed from the property.

¶8 The day after the court entered that order, Whisnand mailed two $400 money orders to the Ledas, with the word "RENT" hand-written upon them. The Ledas immediately handed the money orders over to their attorney, who deposited them in his trust account and wrote a letter to Whisnand, stating:

> Please be advised that these funds have been deposited into my trust account pending the outcome of the above referenced action. Please also be advised that the Leda's [sic] have not accepted this payment as rent in this matter, as they consider your continued occupancy of their property as unlawful. Furthermore, the deposit of these funds into my trust account does not constitute waiver of any right or claim that the Leda's [sic] have or may have against you. Final disposition of these funds will be determined upon order of the Court.

¶9 At the April 1 hearing, Whisnand and the Ledas appeared both personally and by counsel. At the close of the Ledas' presentation, Whisnand's counsel inquired, "Would

the Court like to orally examine the witnesses or would you like me to do that?" The court responded:

> Counsel, under RCW 59.18.380, the Respondent may answer orally or in writing. Your client has answered in writing. You may also do an offer of proof. If there's anything else that your client would like to say, he certainly may be able to say that. I think what you're asking for the Court to do is to swear the parties in and make this a trial. I will not.

The exchange continued:

> [WHISNAND'S COUNSEL]: Okay. I am not. I am just asking that the Court orally examine the parties and--
>
> THE COURT: Counsel, I'm not going to ask the questions. This is not an examination from the bench as far as going through and making questions. I believe that each of you understand your particular positions of your clients, and I would request that you provide me whatever you would like to say. And in fact if you'd look at the Statute, they may answer orally or in writing. I'm giving you an opportunity to do both. Thank you.
>
> [WHISNAND'S COUNSEL]: So will—so will the Court allow me the opportunity to examine the parties and witnesses?
>
> THE COURT: Counsel, I will not swear the parties in. I will not have you cross examine the Plaintiffs. You may make an offer of proof. And I've read the answer of your client from 3/13.

¶10 Whisnand's attorney then presented his contention that the deposit of the money orders sent by Whisnand to the Ledas in the Ledas' attorney's trust account either renewed Whisnand's tenancy or created a new one. After the Ledas' attorney responded, the court asked of Whisnand's attorney, "Counsel, is there anything else that you want to say?"

¶11 The following exchange then took place:

> [WHISNAND'S COUNSEL]: We would just like that the Court consider all of that. And he also believes that actually the lease is not in a period that's terminated at the end of the month, but actually was basically from the 15th through the 15th—

[LEDAS' COUNSEL]: Objection, your Honor. There's nothing on the record about that. The client's had over a month to respond to this. There's absolutely nothing about what the period is on the record in evidence at all, your Honor. So we object.

THE COURT: Objection sustained.

[WHISNAND'S COUNSEL]: Okay.

THE COURT: Is there anything else that you'd like to say?

[WHISNAND'S COUNSEL]: I just want to point out if the Court would orally examine the witness, it could find out this information. That's what we have been asking for.

THE COURT: I understand what you've been asking, and I've given everyone an opportunity to make offers of proof as well as to provide information in writing, in which you have. Counsel, is there anything else that your client felt that he needed to say?

[WHISNAND'S COUNSEL]: Is there anything else you wanted to say to the Court?

MR. WHISNAND: It's—it's plain and simple. In Steve Leda's own exhibition pleading that we paid the first month's rent on the 11th and moved in on the 15th. That's clear. It's in his writing, not mine, your Honor.

The Ledas' own submissions show that Whisnand's first rent payment was made on November 11, 2006, and that most subsequent rent payments (including the December 2006, January 2007, February 2007, March 2007, and April 2007 payments) were made roughly midmonth.

¶12 The court then stated that it would "sign a writ of restitution." Whisnand's counsel inquired, "Will the Court be setting this for trial also?" The court responded:

THE COURT: What specifically are you pointing to that are factual issues that you think ought to be set for trial in that this is a notice to terminate tenancy and that that time frame has passed?

[WHISNAND'S COUNSEL]: Well, the issue that the tenancy was not a tenancy to terminate the last day of the month, but would have terminated on the 15th.

[LEDAS' COUNSEL]: Objection, your Honor. That wasn't in evidence.

THE COURT: And that objection has been sustained. So no, I'm not going to set this matter for trial.

¶13 The court then issued the Ledas a writ of restitution and awarded them $100 in "service fees" and $800 in attorney fees.

¶14 The court also ruled that "[t]he Plaintiff's [sic] have Judgment for an amount to be determined by a later hearing in Supplemental Proceedings for future costs associated with storage and/or disposal of chattel left by the Defendant on the lands herein described."

¶15 Whisnand appeals.

## II

¶16 Whisnand first contends that he either circumvented the termination of his tenancy or created a new tenancy by sending the Ledas $800 that their attorney then deposited in his trust account.[1] This idea is based on a fundamental misconception about the unlawful detainer action brought against him.

¶17 Because this case involves a residential tenancy, it is governed by the Residential Landlord-Tenant Act of 1973, chapter 59.18 RCW. The procedures set forth in the generalized unlawful detainer statutes, chapter 59.12 RCW, "apply to the extent they are not supplanted by those found in the Residential Landlord-Tenant Act." *Hous. Auth. v. Pleasant*, 126 Wn. App. 382, 390, 109 P.3d 422 (2005).

¶18 RCW 59.18.200 requires that a landlord give a tenant at least 20 days' notice before the end of a tenancy period in order to terminate a month-to-month tenancy without statutory cause to do so. If the tenant has been

---

[1] "The burden of proving a contract, whether express or implied, is on the party asserting it, and he must prove each essential fact, including the existence of a mutual intention." *Saluteen-Maschersky v. Countrywide Funding Corp.*, 105 Wn. App. 846, 851, 22 P.3d 804 (2001).

given proper notice, however, the Residential Landlord-Tenant Act does not require the landlord to further justify ending the landlord-tenant relationship. This is the type of tenancy termination at issue here.

¶19 It is true that in an action for unlawful detainer based upon the nonpayment of rent, "the landlord waives prior breaches by accepting rent after he has served the notice to quit." 17 WILLIAM B. STOEBUCK & JOHN W. WEAVER, WASHINGTON PRACTICE: REAL ESTATE: PROPERTY LAW § 6.80, at 447 (2d ed. 2004) (citing *Signal Oil Co. v. Stebick*, 40 Wn.2d 599, 245 P.2d 217 (1952); *MH2 Co. v. Sun M. Hwang*, 104 Wn. App. 680, 16 P.3d 1272 (2001)). But this is not an action to terminate a tenancy based upon the nonpayment of rent. This action is based upon Whisnand holding over as a tenant after receiving notice that the Ledas were terminating his month-to-month tenancy. No reason need be given for such termination; there is no "breach" at issue and thus nothing that the voluntary payment of delinquent rent can "cure." Given that Whisnand's eviction could not be forestalled by the payment of delinquent rent, there is no support for his argument that the Ledas lost their right to have their property restored to them because of Whisnand's unsolicited rent payment.

¶20 Whisnand's argument that a *new* tenancy was created by the deposit of the funds in their attorney's trust account is even further off base. "Leases are contracts, as well as conveyances." *Seattle-First Nat'l Bank v. Westlake Park Assocs.*, 42 Wn. App. 269, 272, 711 P.2d 361 (1985). "Mutual assent is required for the formation of a valid contract." *Yakima County (W. Valley) Fire Prot. Dist. No. 12 v. City of Yakima*, 122 Wn.2d 371, 388, 858 P.2d 245 (1993). Whisnand's contention that the Ledas assented to enter into a new rental agreement with him, no matter their express statement upon receiving the money orders that they "consider[ed his] continued occupancy of their property as unlawful," is utterly meritless.

## III

¶21 Whisnand next contends that the trial court erred by refusing to allow the presentation of evidence during the show cause hearing.[2] We agree.

¶22 RCW 59.18.380 provides, in relevant part:

> At the time and place fixed for the hearing of plaintiff's motion for a writ of restitution, the defendant, or any person in possession or claiming possession of the property, may answer, orally or in writing, and assert any legal or equitable defense or set-off arising out of the tenancy. . . . The court shall examine the parties and witnesses orally to ascertain the merits of the complaint and answer, and if it shall appear that the plaintiff has the right to be restored to possession of the property, the court shall enter an order directing the issuance of a writ of restitution.

Phrased in a less verbose fashion, the statute allows the defendant to appear for the first time at an unlawful detainer show cause hearing and assert, either "orally or in writing," "any legal or equitable defense" to the plaintiff's request for a writ of restitution. The statute then imposes on the trial court an affirmative duty to examine the parties and witnesses, ascertain whether such defenses have merit, and, thus, determine whether a writ of restitution should issue.

¶23 Whisnand contends that he had a right under RCW 59.18.380 to present legal defenses to his eviction during the show cause hearing, that RCW 59.18.380 required the trial court to attempt to ascertain the merits of those defenses by examining the parties, and that he was wrongfully denied both of these things. Whisnand points out that,

---

[2] A trial court's refusal to allow testimony is reviewed for abuse of discretion. *Goodell v. ITT-Fed. Support Serv., Inc.*, 89 Wn.2d 488, 493, 573 P.2d 1292 (1978). "A trial court abuses its discretion when its order is manifestly unreasonable or based on untenable grounds." *Wash. State Physicians Ins. Exch. & Ass'n v. Fisons Corp.*, 122 Wn.2d 299, 339, 858 P.2d 1054 (1993). A trial court necessarily abuses its discretion if its ruling is based on an erroneous view of the law. *Dix v. ICT Group, Inc.*, 160 Wn.2d 826, 833, 161 P.3d 1016 (2007).

to the extent there was an absence of evidence in the record that the period of his tenancy ran from the 15th day of one month to the 14th day of the next month, such evidentiary deficiency is the result of the commissioner's refusal to allow him to present such evidence.[3] According to Whisnand, the Ledas' own submissions to the court supported this defense, but he was nevertheless prevented from arguing it by the trial court's refusal to either engage in or allow examination of the parties. The Ledas respond that Whisnand reads the requirements of the statute too broadly and that, under a correct reading, he was afforded as much opportunity to make his case as the statute allows.[4] We agree with Whisnand.

¶24 The text of RCW 59.18.380 illustrates that Whisnand was afforded an insufficient opportunity to make his case. Under that statute, a tenant is entitled, at the show cause hearing, to "answer, orally or in writing, and assert any legal or equitable defense . . . arising out of the tenancy." In other words, Whisnand was permitted to orally assert any legal defense to the issuance of a writ of restitution for the first time at the statutorily required show cause hearing. There is a sound public policy behind this flexibility: given the relatively low financial stakes in the average residential rental dispute and the resulting difficulty that most persons at risk of eviction face in retaining attorneys, the legislature has relieved such litigants of the burdens of formality associated with Civil Rule

[3] Some explanation of why the monthly start and end days of Whisnand's tenancy period are relevant may be helpful, given that the Ledas gave him more than 30 days of notice prior to initiating this action. Under RCW 59.18.200, a party seeking to terminate a tenancy must give notice at least 20 days *before the end of a tenancy period*. Thus, if the Ledas gave Whisnand notice on January 30 and Whisnand's tenancy period did not end until February 14, the earliest date that the Ledas could have initiated this suit would have been March 14—the first end of a tenancy period more than 20 days after the service of notice. If, in contrast, the period was from the 1st of any month until the end of that month, the Ledas would have given more than adequate notice to commence suit on March 1.

[4] Notably, the Ledas conceded at oral argument in this court that Whisnand properly asserted the tenancy period as a defense and that this defense presented a contested issue of fact that required further proceedings. Nonetheless, the Ledas maintain that the show cause hearing was properly conducted.

pleading. Here, however, the trial court incorrectly assumed that Whisnand waived any defense associated with his tenancy period by not having asserted it in his written pro se answer.

¶25 Moreover, RCW 59.18.380 imposes an affirmative duty on the trial court to ascertain the merits of defenses raised for the first time during an unlawful detainer show cause hearing by examining the parties and any witnesses—i.e., to "examine the parties and witnesses orally to ascertain the merits of the . . . answer." Here, the trial court declined to elicit, and declined to permit Whisnand's counsel to elicit, testimony as to Whisnand's tenancy period. However, Whisnand's asserted defense—that he had received insufficient notice as a result of the landlord's miscalculation of the tenancy period—was a viable one. Moreover, the defense was supported by the pleadings. The Ledas' own submissions to the court reveal that Whisnand's first rent payment was made midmonth. The record also shows that Whisnand moved into the property on the 15th of the month and that most of his subsequent rent payments were also made midmonth. Thus, the trial court erred by ruling that no factual issues existed warranting the matter being set for trial.

¶26 The Ledas make much of the fact that an RCW 59.18.380 show cause hearing "is not a trial." Indeed, it is undisputed that a defendant at such a hearing is not entitled to a full trial. *See Carlstrom v. Hanline*, 98 Wn. App. 780, 789, 990 P.2d 986 (2000); *Meadow Park Garden Assocs. v. Canley*, 54 Wn. App. 371, 375, 773 P.2d 875 (1989). Moreover, it is well established that due process does not require that a defendant in an unlawful detainer action be allowed direct and cross-examination of parties and witnesses at the show cause hearing. *Carlstrom*, 98 Wn. App. at 789-90.

¶27 However, it does not follow that trial courts may properly disregard evidence that credibly supports a legitimate defense. This is especially so where, as in RCW 59.18.380 show cause hearings, summary rulings routinely

determine whether a trial is available at all, and so routinely constitute the only opportunity to present any evidence. Indeed, the prejudicial effect of the trial court's refusal to take testimony in this case is manifest. Whisnand sought to present evidence that, if true, would have established that he had been given insufficient notice by the Ledas of their intent to terminate his tenancy. This evidence, if true, would have mandated a conclusion that the trial court had no authority to issue a writ of restitution. *Christensen v. Ellsworth*, 162 Wn.2d 365, 372, 173 P.3d 228 (2007).

¶28 A tenant who raises a viable legal defense, either in written submissions or during the show cause hearing, is entitled to testify in support of that defense. The rules of evidence apply to unlawful detainer show cause hearings, and inadmissible evidence may not be therein considered. *Pleasant*, 126 Wn. App. at 392. Under ER 603, unsworn testimony is inadmissible. Whisnand was therefore entitled to be sworn.

¶29 Whisnand was also entitled to have the Ledas sworn and examined as to the merits of the asserted defense because RCW 59.18.380 expressly directs the court to "examine the parties." RCW 59.18.380 also expressly contemplates testimony by witnesses other than the parties. Examination of such witnesses is also required, if necessary to ascertain the merits of a defense.

¶30 How does all of this differ from a trial, to which the defendant has no right? The answer is, again, found in the text of the statute itself. At trial, parties have the sole right (within the confines of the rules of evidence) to decide how to present their cases, which questions to ask, and how much noncumulative testimony to present in seeking to establish the elements of any asserted claim or defense. In contrast, RCW 59.18.380 directs *the court* to examine the parties and any witnesses. In other words, if an unlawful detainer defendant properly asserts a viable defense either in written pleadings or at an RCW 59.18.380 show cause hearing, the trial court has the discretion to conduct exami-

nation in lieu of the parties doing so, and so to limit testimony to that which is strictly necessary to properly decide the issue of interim possession of the property.

¶31 A legitimate legislative rationale exists for such an arrangement. Both the United States Constitution and the Washington Constitution require, at a minimum, that a defendant subject to an action for unlawful detainer be afforded "a meaningful opportunity to be heard." *Carlstrom*, 98 Wn. App. at 790. At the same time, this procedural right does not utterly overshadow " 'the government's interest in maintaining' " efficient show cause hearings. *Carlstrom*, 98 Wn. App. at 790 (quoting *Krein v. Nordstrom*, 80 Wn. App. 306, 310, 908 P.2d 889 (1995)). Put another way, Washington law simply does not countenance eviction of people from their homes without first affording them some opportunity to present evidence in their defense, but that right is not absolute: it is tempered by a grant of authority to trial courts to manage the scope and manner in which evidence is presented, rather than leaving it to the discretion of attorneys or pro se litigants.

¶32 In summary, then, the proper procedure by which a trial court should conduct an RCW 59.18.380 show cause hearing is as follows: (1) the trial court must ascertain whether *either* the defendant's written or oral presentations potentially establish a viable legal or equitable defense to the entry of a writ of restitution and (2) the trial court must then consider sufficient admissible evidence (including testimonial evidence) from parties and witnesses to determine the merits of any viable asserted defenses. Because RCW 59.18.380 contemplates a resolution of the issue of possession based solely on the show cause hearing, either the court must manage its examination[5] in a sufficiently expeditious manner to accommodate its calendar while still preserving the defendant's procedural rights or it must briefly set the matter over for a longer show cause hearing in which those rights are respected.

---

[5] The trial court may, of course, choose to allow the parties or their counsel to conduct witness examinations in its stead.

¶33 Here, the trial court did none of these things. Instead, the court barred Whisnand from presenting any evidence as to the tenancy period solely because he had not yet presented evidence as to the tenancy period. This reasoning is plainly circular. If no evidence may be presented at an unlawful detainer show cause hearing beyond that which exists in the written pleadings, the exclusive purpose of the show cause hearing—the presentation of evidence—ceases to exist. This would render RCW 59.18-.380 virtually meaningless—nothing more than a requirement that superior courts hold perfunctory and purposeless hearings on matters to be decided solely on the pleadings. But an answer is not an evidentiary submission. The only true opportunity that a defendant has to present evidence against immediate eviction is at the show cause hearing. This being the case, it is unsurprising that the statute affords defendants the opportunity to do so.

¶34 Instead of affording Whisnand such an opportunity, however, the trial court restricted him to making an "offer of proof," yet inexplicably sustained an objection to the offer made. As Whisnand observed during the hearing, the Ledas' own submissions indicated that his first rent payment occurred midmonth. Thus, to the extent that the trial court allowed Whisnand to make an "offer of proof," the proof that he offered demonstrated that he properly asserted his tenancy period as a defense and, thus, that the trial court abused its discretion by refusing to hear and consider testimony on the question.

IV

¶35 Whisnand also contends that the superior court improperly entertained the unlawful detainer action brought against him in the first instance. According to Whisnand, this is so because the inconsistent dates on the statutory termination notice and the affidavit by Steven Leda call into question whether service of the required statutory notice was proper. What Whisnand is actually

arguing is that the trial court's finding of fact that he "was properly notified of the termination of the tenancy effective end of day February 29th, 2008" was erroneous.[6] Given that Whisnand was actively prevented from presenting evidence at the show cause hearing, however, we are unable to discern from the record before us whether this contention has merit. Accordingly, this matter must be revisited by the parties and the court on remand.

¶36 As previously discussed, RCW 59.18.200 requires that a landlord give a tenant at least 20 days' notice before the end of a tenancy period in order to terminate a month-to-month tenancy without statutory cause to do so. A court has no power to give a landlord relief from a holdover tenancy unless the tenant was accorded proper notice. *Christensen*, 162 Wn.2d at 372. If the tenant cannot be personally served with notice, "service may be effectuated by 'affixing a copy of the notice in a conspicuous place on the premises unlawfully held' and sending an additional 'copy through the mail addressed to the tenant, or unlawful occupant, at the place where the premises unlawfully held are situated.' " *Christensen*, 162 Wn.2d at 371 (quoting RCW 59.12.040(3)). "Proof of service under the unlawful detainer statutes may be made by affidavit of the person making service 'in like manner and with like effect as the proof of service of summons in civil actions.' RCW 59.12.040. Proof of service of a summons in a civil action is governed by CR 4(g)." *Marsh-McLennan Bldg., Inc. v. Clapp*, 96 Wn. App. 636, 640, 980 P.2d 311 (1999). Under CR 4(g)(2), proof is made by an affidavit attached to the summons commencing the action.

¶37 Whisnand does not dispute that Steven Leda's sworn declaration describing proper service of notice was attached to the summons. Nor does he dispute that the facts stated in the declaration—that Steven Leda both mailed the notice to him and posted the notice on his door on

---

[6] A trial court's finding of fact will not be overturned on appeal if it is supported by substantial evidence. *MH2 Co.*, 104 Wn. App. at 685.

January 30, 2008—would, if true, demonstrate that the form of notice complied with the statutory requirements. Instead, he challenges the sufficiency of the *proof* of service, arguing that because of the inconsistent dates, the proof was insufficient.

¶38 The authority that he provides for this proposition is a statement by this court that "[d]iscrepancies in the dates on the documents would also create doubt as to whether the summons and complaint were properly served." *Lee v. W. Processing Co.*, 35 Wn. App. 466, 469, 667 P.2d 638 (1983). The problem with attempting to apply *Lee* in this case, however, is that we found proof of service to be insufficient in that case because there existed a raft of evidence beyond the inconsistent dates demonstrating that service had not actually been made. *See Lee*, 35 Wn. App. at 468 ("Western supported its motion to vacate the default judgment with affidavits of all Western's office employees, who denied they had ever been served with the summons and complaint.").

¶39 Here, by contrast, Whisnand was actively prevented from presenting evidence in support of *any* of his proffered defenses. "The return . . . is subject to attack and may be discredited by competent evidence." *Lee*, 35 Wn. App. at 469. It is impossible to determine whether the trial court's factual finding of proper service is supported by substantial evidence because the record is incomplete. The matter must be addressed on remand.[7]

## V

¶40 The trial court awarded attorney fees to the Ledas. Because there is not yet a prevailing party, the award is vacated. On remand, any award of reasonable attorney fees must be accompanied by findings of fact and conclusions of law establishing both the fee award's justification and its reasonableness in order to allow meaningful

---

[7] Whisnand also contends that the trial court improperly awarded process server costs to the Ledas. The Ledas agree. The award made is vacated. On remand, no such award should be made.

appellate review. *Mahler v. Szucs*, 135 Wn.2d 398, 434-35, 957 P.2d 632, 966 P.2d 305 (1998).[8]

## VI

¶41 Both parties request attorney fees on appeal. Although RCW 59.18.290(2) allows for an award of attorney fees to the prevailing party in an unlawful detainer action based upon a holdover tenancy, the trial court's determination of the prevailing party in this case was premature. Because, then, no party has yet prevailed on the merits, any determination of the prevailing party on appeal would likewise be premature. *See Home Realty Lynnwood, Inc. v. Walsh*, 146 Wn. App. 231, 242, 189 P.3d 253 (2008).

¶42 Reversed and remanded.

AGID and ELLINGTON, JJ., concur.

---

[8] Whisnand also requests that we remand for the trial court to strike that portion of its ruling in which it retains jurisdiction in order to impose further costs in the event that he fails to remove his belongings from the Ledas' property. This issue is moot.