FILED
COURT OF APPEALS
DIVISION II

2013 SEP 10 AM 8: 37

STATE OF WASHINGTON

BY_____
    DEPUTY

# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

## DIVISION II

| | |
|---|---|
| COUNTRY MANOR MHC, LLC, d/b/a COUNTRY MANOR MANUFACTURED HOME COMMUNITY, | No. 43200-5-II |
| Appellant, | |
| v. | |
| JOHN DOE OCCUPANT and JANE DOE OCCUPANT, a/k/a LES CLIFTON and LINDA A. CLIFTON, husband and wife, | PUBLISHED OPINION |
| Respondents. | |

QUINN-BRINTNALL, J. — Country Manor MHC, LLC, d/b/a Country Manor Manufactured Home Community, a mobile home community, appeals the trial court's decision to hold an evidentiary hearing in this unlawful detainer action and to allow tenants Les and Linda Clifton time to cure their default before issuing a writ of restitution. Country Manor also appeals the trial court's refusal to award attorney fees under the Manufactured/Mobile Home Landlord-Tenant Act (MHLTA), ch. 59.20 RCW. Both Country Manor and the Cliftons request fees under the MHLTA on appeal. Because the MHLTA requires a landlord to act reasonably and to enforce its rules fairly and in good faith, we affirm the trial court's decision to hold an evidentiary hearing, remand for a partial award of fees to Country Manor under RCW 59.20.110, and deny each party's request for fees on appeal.

FACTS

Country Manor is a mobile home park that leases lots to tenants for the placement of their mobile homes. In 2008, Linda[1] entered into a rental agreement with Country Manor and moved alone into her home on Lot 5. Her husband Les later moved into her home without Country Manor's permission, but he eventually obtained the necessary authorization for occupancy rather than tenancy after being screened for criminal history.

In August 2011, Linda sold her home on Lot 5 to Eva Ball, another Country Manor tenant. Linda signed the notice of intent to sell on September 16, but she did not deliver it to Country Manor's office until September 28, 2011. At the same time, Les delivered a notice of intent to sell from Bernadine Baum, who owned Lot 15. That notice, also dated September 16, stated that Baum intended to sell her residence to Linda. The Cliftons purchased the Lot 15 residence on September 22 and began moving to that residence in October. Gregory Danford, the owner of Country Manor since August 2010, explained to the Cliftons that they would need to fill out new tenancy applications before their move to Lot 15 was approved.

When the Cliftons did not submit new applications, Country Manor delivered a letter to Baum denying her transfer of tenancy to Linda because the Cliftons had not submitted new applications, as required for any new tenant. Country Manor also served a three-day notice to quit on the Cliftons, asking them to vacate Lot 15 because they did not have permission to occupy it. Country Manor subsequently served the Cliftons with a notice to comply informing them that they sold their home on Lot 5 and bought the home on Lot 15 without providing proper notice and without submitting new applications. When the Cliftons did not respond by vacating

---

[1] The Cliftons' first names are used for clarity.

2

the premises or submitting new applications, Country Manor brought an unlawful detainer action.

In its complaint, Country Manor asserted that the Cliftons were occupying Lot 15 without permission, as explained in the notice to comply. The Cliftons did not file an answer, but they did appear pro se at the show cause hearing.

Country Manor argued at the hearing that there were no factual issues to resolve and that the Cliftons' refusal to provide proper notice and to obtain its permission to occupy Lot 15 required them to vacate the premises. Linda replied that other Country Manor residents had transferred their tenancies without submitting new applications, and she contended that Country Manor was not acting in good faith by requiring the Cliftons to submit new applications before they assumed the Lot 15 tenancy. She argued that Country Manor was imposing the new application requirement because of animosity toward Les. Country Manor replied that the experiences of other tenants were irrelevant and that a writ of restitution was appropriate because the Cliftons had not met the legal standards for transferring their tenancy to Lot 15.

The trial court reviewed the applicable statute, RCW 59.20.073, and ordered an evidentiary hearing after concluding that the statute requires a landlord to be reasonable in refusing to consent to a tenancy assignment. The Cliftons filed a written answer to the complaint as directed and retained an attorney.

Their attorney asserted at the evidentiary hearing that his clients had legal defenses based on the need for good faith and a fair application of the rules. After Danford and the Cliftons testified, Country Manor argued that all tenants had been treated consistently since Danford had purchased Country Manor and that there was no need for a further offer of proof from the Cliftons. The trial judge disagreed and decided to hear additional testimony.

Four Country Manor residents testified on the second day of the hearing, as did a Country Manor employee. Country Manor argued in closing that the Cliftons' failure to comply with the application and notice requirements was dispositive and that there was no issue of reasonableness. The Cliftons responded that they had substantially complied with the statutory requirements and that Country Manor was requiring them to perform a frivolous act by requiring them to reapply for tenancy.

The trial court found no statutory support for the Cliftons' position that once they were in the park, they were free to transfer their lease to any other lot in the park. The court noted further that the MHLTA requires landlords to treat all tenants fairly and to treat all tenants as though they were first-time applicants to the park. "So if he would ask for this information before deciding that a new tenant can come into the park, he can ask for that information from a person who's already in the park before deciding whether to transfer. That's not unreasonable." 2 Report of Proceedings (RP) at 204.

The trial court gave the Cliftons a chance to cure their default by submitting new tenancy applications by January 18. If Country Manor disapproved their transfer, the court would review whether the reasons for disapproval were appropriate. The court ordered each party to bear its own fees and costs because each had partially prevailed.

After the Cliftons submitted their applications, Country Manor denied the tenancy transfer based on their credit, criminal, and eviction history. The trial court upheld that denial and entered findings of fact and conclusions of law and a judgment for a writ of restitution, past due rent, and other charges, as well as statutory fees and costs. The trial court declined to award Country Manor attorney fees under the MHLTA.

Country Manor appeals, arguing that the trial court erred in denying its request for a writ of restitution at the initial show cause hearing and in denying its request for attorney fees under the MHLTA. Both parties request attorney fees on appeal.

DISCUSSION

REASONABLENESS UNDER THE MHLTA

Country Manor contends that the trial court incorrectly injected a reasonableness standard into RCW 59.20.073. Country Manor asserts that this error caused the trial court to order an unnecessary evidentiary hearing and improperly gave the Cliftons a chance to rectify their failure to comply with the statute. Country Manor adds that even though it ultimately received the writ of restitution it requested, the trial court's failure to grant this relief at the initial hearing as a matter of law may be reviewed on appeal. *See Kaplan v. Nw. Mut. Life Ins. Co.*, 115 Wn. App. 791, 799, 65 P.3d 16 (2003) (summary judgment denial is subject to appellate review if the parties dispute no issues of fact and the decision turned solely on a substantive issue of law), *review denied*, 151 Wn.2d 1037 (2004). Despite the fact that Country Manor prevailed at the hearing, the issue presented in this appeal is not moot because Country Manor argues that the trial court's misinterpretation of the MHLTA led to its wrongful denial of Country Manor's request for attorney fees. *See Orwick v. City of Seattle*, 103 Wn.2d 249, 253, 692 P.2d 793 (1984) (case is moot when court can no longer provide effective relief).

We review questions of statutory interpretation de novo. *Dot Foods, Inc. v. Dep't of Revenue*, 166 Wn.2d 912, 919, 215 P.3d 185 (2009). Where statutory language is plain and unambiguous, we ascertain the statute's meaning solely from its language. *Dot Foods, Inc.*, 166 Wn.2d at 919. We read an unambiguous statute as a whole. *Dot Foods, Inc.*, 166 Wn.2d at 919.

5

In construing an ambiguous statute, we must give effect to all of its language so that no portion is rendered meaningless or superfluous. *Kilian v. Atkinson*, 147 Wn.2d 16, 21, 50 P.3d 638 (2002).

A Washington tenant is generally free to assign or sublet his lease. 17 WILLIAM B. STOEBUCK AND JOHN C. WEAVER, WASHINGTON PRACTICE: REAL ESTATE: PROPERTY LAW, § 6.63 at 416 (2nd ed. 2004). The only exception to this rule is in the MHLTA, where RCW 59.20.073 restricts the power of the tenant of a mobile home lot to assign without the landlord's consent. 17 WASH. PRAC., *supra*, at 416. This statute governs the transfer of rental agreements as follows:

> (1) Any rental agreement shall be assignable by the tenant to any person to whom he or she sells or transfers title to the mobile home, manufactured home, or park model.
>
> (2) A tenant who sells a mobile home, manufactured home, or park model within a park shall notify the landlord in writing of the date of the intended sale and transfer of the rental agreement at least fifteen days in advance of such intended transfer and shall notify the buyer in writing of the provisions of this section. . . .
>
> . . . .
>
> (5) The landlord shall approve or disapprove of the assignment of a rental agreement on the same basis that the landlord approves or disapproves of any new tenant, and any disapproval shall be in writing. *Consent to an assignment shall not be unreasonably withheld.*
>
> (6) Failure to notify the landlord in writing, as required under subsection (2) of this section; or failure of the new tenant to make a good faith attempt to arrange an interview with the landlord to discuss assignment of the rental agreement; or failure of the current or new tenant to obtain written approval of the landlord for assignment of the rental agreement, shall be grounds for disapproval of such transfer.

RCW 59.20.073 (emphasis added).

Also relevant is RCW 59.20.020, which requires every duty and act performed as a condition precedent to the exercise of a right or remedy under the MHLTA to be performed or enforced in good faith. In addition, RCW 59.20.045(3) provides that rules are enforceable

6

against a tenant only if they are applied to all tenants in a fair manner. The MHLTA thus imposes a duty of good faith and fair dealing on landlords in enforcing rules against a tenant.

Country Manor contends that this case is governed by RCW 59.20.073(2) and (6) and that the reasonableness consideration in subsection (5) is irrelevant. It argues first that the Cliftons' failure to comply with the notice requirements in subsection (2) was dispositive and that the trial court should have issued the writ of restitution following the initial show cause hearing.

The plain language of RCW 59.20.073(2) does not support Country Manor's argument regarding the dispositive nature of the Cliftons' notice violations. Country Manor's complaint for unlawful detainer contended that the Cliftons violated subsection (2) by failing to provide proper notice of the proposed sale of their Lot 5 residence and the proposed assignment of the Lot 15 rental agreement. RCW 59.20.073(2) plainly applies only to the seller of a mobile home, however, and Country Manor approved the Cliftons' sale of their Lot 5 residence. *See White River Estates v. Hiltbruner*, 84 Wn. App. 352, 362, 928 P.2d 440 (1996) (under MHLTA, tenant who sells mobile home in park must notify landlord in writing at least 15 days before transfer), *rev'd on other grounds*, 134 Wn.2d 761, 953 P.2d 796 (1998). The Cliftons were the buyers of the Lot 15 residence, so the requirements of RCW 59.20.073(2), which apply to sellers, were not grounds for disapproval of the Lot 15 assignment as a matter of law.

Country Manor argues further that the Cliftons' failure to obtain its approval for the Lot 15 transfer under RCW 59.20.073(6) was dispositive and that no inquiry into the reasonableness of its disapproval was warranted. Both trial judges presiding over this case rejected this reading of RCW 59.20.073.

7

At the initial show cause hearing, the Cliftons argued that Country Manor was not acting in good faith by requiring them to submit new applications to move within the park when it had not required other residents to do so. The trial court declined to find RCW 59.20.073(6) dispositive and held that subsection (5) required an evidentiary hearing into the reasonableness of Country Manor's refusal to allow the transfer of Lot 15. "I believe, in reviewing the statute, that it's a shifting kind of a burden. It's presumptive that it will be disapproved and that would be appropriate, but I don't think it's dispositive." RP (Nov. 23, 2011) at 19.

A different judge presided over the evidentiary hearing. At the close of the first day, and after the Cliftons' attorney argued that Country Manor was not applying its rules consistently and in good faith and the Cliftons testified accordingly, the trial court ruled that additional testimony was appropriate: "[T]he statute itself does not internally determine which of those 'shalls' takes priority over the other 'shalls.' And so that's what I will have to resolve once I've heard all of the testimony." 1 RP at 117. After hearing additional testimony, the court interpreted RCW 59.20.073 as follows:

> [T]he statute, read as a whole, imposes on all parties a duty of good faith and a duty to act with one another reasonably. And I'm supposed to make sure that whatever result I reach is reasonable and that it upholds the basic understanding of the legislature that tenants within mobile home parks can sell their mobile homes and that they can assign their rental agreement to the people who buy the . . . mobile home, unless the landlord has some reasonable basis for denying the assignment of the rental agreement.

2 RP at 202-03.

We agree that subsection (6) cannot be read in a vacuum and that the reasonableness standard of subsection (5) is relevant in assessing a landlord's decision to withhold consent to a transfer. Country Manor's reading of RCW 59.20.073 renders subsection (5), and its requirement that landlords apply the same rules to new and existing tenants and not unreasonably

withhold consent to a transfer, completely meaningless and superfluous. Under Country Manor's interpretation, a landlord's refusal to approve an assignment is dispositive regardless of whether it is reasonable. We reject this construction of RCW 59.20.073 and hold that subsection (5) and its reasonableness standard were relevant in assessing the enforceability of Country Manor's actions in this case. Given this interpretation of RCW 59.20.073, the trial court's decision to hold an evidentiary hearing did not conflict with RCW 59.18.380, which governs unlawful detainer proceedings.

An unlawful detainer action is a statutorily created proceeding that provides an expedited method of resolving the right to possession of property. *Christensen v. Ellsworth*, 162 Wn.2d 365, 370-71, 173 P.3d 228 (2007). Upon filing an action for unlawful detainer, the plaintiff may apply for an order directing the defendant to appear and show cause why a writ of restitution should not issue restoring possession of the property to the plaintiff. RCW 59.18.370; RCW 59.20.040. At the hearing on a motion for a writ of restitution, a tenant is entitled to answer and may assert any legal or equitable defenses arising out of the tenancy. RCW 59.18.380; *Leda v. Whisnand*, 150 Wn. App. 69, 80, 207 P.3d 468 (2009). A tenant who raises a viable legal defense, either in written submissions or during the show cause hearing, is entitled to testify in support of that defense and to present other witnesses as well. *Leda*, 150 Wn. App. at 82. The court may conduct that examination itself or allow the parties or counsel to do so, and it may set the matter over for a longer hearing if necessary. *Leda*, 150 Wn. App. at 83. The trial court must consider sufficient admissible evidence from parties and witnesses to determine the merits of any viable asserted defenses. *Leda*, 150 Wn. App. at 83.

The trial court did not err in concluding that the Cliftons presented legal defenses as well as issues of material fact that justified an extended evidentiary hearing. Nor did the trial court err

in allowing the Cliftons an opportunity to cure their default by submitting new applications, the disapproval of which would be subject to review for reasonableness as well as good faith and fair dealing. The trial court fashioned this remedy after correctly interpreting the MHLTA, and Country Manor does not show that it erred in doing so.

ATTORNEY FEES UNDER THE MHLTA

Country Manor argues further that the trial court erred in denying its request for attorney fees under the MHLTA. Both parties request fees on appeal under the MHLTA.

We review de novo a trial court's determination as to whether a particular statutory provision authorizes an award of attorney fees. *Gray v. Pierce County Hous. Auth.*, 123 Wn. App. 744, 760, 97 P.3d 26 (2004). RCW 59.20.110 provides that "[i]n any action arising out of this chapter, the prevailing party shall be entitled to reasonable attorney's fees and costs." Courts have used this provision to award fees in cases involving mobile home unlawful detainer actions. *See, e.g., Hartson P'ship v. Martinez*, 123 Wn. App. 36, 44, 96 P.3d 449 (2004), *review denied*, 154 Wn.2d 1010 (2005); *Duvall Highlands LLC v. Elwell*, 104 Wn. App. 763, 771-72, 19 P.3d 1051 (2001); *Hwang v. McMahill*, 103 Wn. App. 945, 954, 15 P.3d 172 (2000), *review denied*, 144 Wn.2d 1011 (2001).

If neither party wholly prevails, the party who substantially prevails is entitled to attorney fees. *Seashore Villa Ass'n v. Hugglund Family Ltd. P'ship*, 163 Wn. App. 531, 547, 260 P.3d 906 (2011), *review denied*, 173 Wn.2d 1036 (2012). But if both parties prevail on major issues, both parties bear their own attorney fees. *Seashore Villa Ass'n*, 163 Wn. App. at 547. Country Manor ultimately obtained a judgment in its favor in this mobile home unlawful detainer action, but only after the trial court rejected its request for a summary disposition and gave the Cliftons an opportunity to cure their default. We agree with the trial court that both parties prevailed in

10

part through the evidentiary hearing that concluded on January 6, 2012. Consequently, Country Manor is entitled only to reasonable attorney fees related to the subsequent hearing that resulted in a judgment in its favor. *See Seashore Villa Ass'n*, 163 Wn. App. at 547 (prevailing party is one who obtains judgment in its favor). Because both parties prevailed on major issues on appeal, neither is entitled to fees on appeal under RCW 59.20.110.

We remand for a partial award of attorney fees to Country Manor under RCW 59.20.110 and affirm in all other respects. We decline to award appellate attorney fees.

QUINN-BRINTNALL, J.

We concur:

JOHANSON, A.C.J.

FEARING, J.

11