IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
DIVISION THREE

| | | |
|---|---|---|
| HMD ENTERPRISES, LLC, a Washington limited liability company, authorized agent for owner, | ) ) ) ) | No. 40068-9-III |
| Respondent, | ) ) | |
| v. | ) ) | |
| ROSS CARTER, a single person; CHERYL CARTER, a single person; and all other subtenants, | ) ) ) ) | UNPUBLISHED OPINION |
| Defendants, | ) ) | |
| MICHAEL MOSELEY, a single person, | ) ) | |
| Appellant. | ) | |

MURPHY, J. — Michael Moseley appeals from the issuance of a writ of restitution in favor of HMD Enterprises, LLC. We reverse the order and judgment granting the writ, and remand for further proceedings.

## FACTS

On August 18, 2023, HMD Enterprises, LLC (HMD) initiated an action against Ross Carter, Cheryl Carter, and Michael Moseley for unlawful detainer and damages pursuant to chapters 59.12, 59.18, and 59.20 RCW. HMD alleged that in 2012 it leased a

mobile home lot and premises to Ross and Cheryl Carter. It was further alleged that the

lease would continue annually, with lot rent of $235 per month, and that on August 1,

2020, the Carters were served with notice of a rent increase to $270 per month. HMD

claims that, in April 2023, it discovered Moseley resided at the leasehold premises with

the Carters, and that Moseley's occupancy was without HMD's consent and without

color of title.

> In the complaint, HMD alleged the Carters breached their tenant duties by:

> including but not limited to: violation of park rules and/or statutory
> tenant duties; disorderly or substantially annoying conduct that materially
> affects the health, safety, and welfare of other park residents and results
> in destruction in rights of others to peaceful enjoyment and use for the
> premises; engaging in unauthorized subletting/assignment of the leasehold
> premises and/or allowing an unauthorized occupant to reside in on [sic]
> the leasehold lot without Plaintiff's consent; engaging in and/or allowing
> guest/unauthorized occupant to engage in unlawful/illegal criminal activity
> on the leasehold premises, including allowing verbally harassing,
> threatening, physically assaulting, and/or causing bodily injury to
> management and/or property staff by tackling, biting, and punching the
> staff member, resulting in bodily injury.

Clerk's Papers (CP) at 6-7. HMD asserted that the Carters were served with a notice to

comply or vacate on June 13, 2023, pursuant to former RCW 59.20.080(1)(a) (2023), and

that Moseley was served with a notice to quit and vacate, pursuant to RCW 59.12.030(6)

and/or RCW 59.20.080(1)(f), also on June 13. A purported authorized agent for

HMD verified the complaint for unlawful detainer with the language, "I have read the

2

foregoing complaint, I am aware of the contents thereof and believe the facts set forth therein to be true and correct." CP at 11-12.

On August 22, 2023, HMD moved for an order to show cause as to why a writ of restitution should not be issued. Two declarations of service of the summons and complaint were also filed on August 22, indicating that Ross Carter and Cheryl Carter were served with the "Eviction Summons (Residential / Mobile home)" and "Complaint for Unlawful Detainer and Damages (RCW 59.18 et seq. and RCW 59.20 et seq)" on August 5, 2023, "by delivery to Michael Moseley a person of suitable age and discretion residing [at the mobile home premises]." CP at 23-26. A third declaration of service filed on August 22 indicated that Michael Moseley had been personally served with the summons and complaint in his capacity as a party to the unlawful detainer action. CP at 27-28. There were no filings by HMD in support of its show cause motion related to proof of service for any pre-eviction notices, in any form, to comply or quit and vacate.

The same day that the show cause motion and declarations of service were filed, the court entered an order to show good cause why a writ of restitution should not be issued, finding in part:

> Defendants are alleged in substantial breach of material tenant duties
> including engaging in criminal activity that affects the health, safety,
> or welfare of other tenants; Defendants, Ross Carter and Cheryl Carter,
> were properly served with a Notice to Comply or Vacate, pursuant to
> RCW 59.20.080 (1)(a)(i)(j)(l), and failed to comply with tenant duties or

3

vacate; Defendant, Michael Moseley, is occupying the property without
Plaintiff's consent or color of title thereto and was properly served with
a Notice to Quit and Vacate, pursuant to RCW 59.12.030(6) and/or
RCW 59.20.080(1)(f), and failed to vacate.

CP at 30. A show cause hearing was set for September 6, 2023.

At the September 6 hearing, the attorney for HMD, the attorney for Moseley, and

Moseley were present. After statements were made by counsel for HMD, counsel for

Moseley was invited to address the court. At that time, counsel for Moseley raised

various issues with the proceedings.

> [COUNSEL FOR MOSELEY]: Thank you, Your Honor. I'm not
> exactly sure why we are here today. First off, as the Court has noticed, the
> complaint itself is lacking. There's no attachments, including a lease;
> there's no ledger regarding any allegations of non-payment; there's no
> other attachments specific to any rule breaking or non-conforming
> behavior. The allegations in the complaint are non-specific as to what
> happened where and when and by whom as regards to any assaultive
> behavior or rule breaking.
> The landlord does have a burden of proof to show compliance with
> the unlawful detainer statute. Strict compliance regarding time, place and
> manner, a pre-eviction notice is required. Here again, there is no notice
> that's provided, so we can't even determine that there is substantial
> compliance with the form of the notice. And additionally, I would note
> that the individual who signed off regarding the verification of the
> complaint, . . . , she indicates on page twelve she's aware of the contents
> and believes the facts set forth there and to be true and correct. So, she
> doesn't actually know; she just believes these facts to be true and correct.
> She's not swearing that they are true and correct. I would note that in other
> locations within the complaint it does use the word "believe" as opposed,
> for example, on page nine at the bottom of the complaint, damages, section
> 2.15, damages to the premises, defendants are believed to be endangering
> the household premises by committing waste.

4

It's also somewhat questionable whether we're operating under the RTLA [Residential Landlord-Tenant Act of 1973, chapter 59.18 RCW) or the MHLTA [Manufactured/Mobile Home Landlord-Tenant Act, chapter 59.20 RCW]. Within the complaint itself, I note that it does indicate that there's some owed lot rent. It's not specific as to when that lot rent is owed. It also in other places indicates that the Defendant leased from the Plaintiff the real property and the leasehold premises. Okay. So one of the questions that's unclear about this complaint is are they just alleging that the Defendants owe lot rent or they owe lot rent and rent for the mobile home itself. So are they contesting ownership of the mobile home? It appears to be unclear from that.

So I guess, due to the insufficiencies of the complaint, Your Honor, I mean, I'll just straight out say, my request would be that—oh, and I would note while I'm not the Carters' attorney, the abode service in my opinion, is insufficient. They would need to serve them directly; cannot serve another individual on their behalf.

I would request that you deny the show cause hearing, request dismiss without prejudice and award attorney's fees of $500. Alternatively that that $500 could be credited towards any monies that would be owed towards any—towards the landlord in the future should the dispute continue. I understand the Court may be loathed to dismiss without prejudice at this time, and so as an alternative, you could continue the show cause hearing out some three or four weeks to allow the Plaintiff to amend the complaint provide the necessary documents, and we could have the show cause hearing at that time, and at that time determine whether trial should be set.

1 Rep. of Proc. (RP) (Sept. 6, 2023) at 10-13. After hearing again from counsel for HMD,

the court concluded the hearing and ruled:

THE COURT: Well, here's what the Court finds today. Mr. Moseley is unlawfully on the premises. He's not on the lease. He lives in the premises without authorization and the Court will find that and will order a writ of restitution for him to vacate the premises. The Court will not enter any judgment against Mr. Moseley for fees or costs or anything else because he's not a tenant. He didn't sign the lease and—

5

[COUNSEL FOR MOSELEY]: Your Honor, if I may say, we don't have a copy of the lease to determine who's even on the lease.

THE COURT: Yeah. Well, it's in the—enough information is in the complaint. The Court finds the complaint to be verified and it's a sufficient factual basis for the Court to find that Mr. Moseley is unlawfully detaining the trailer at its said location in Whitman County, Washington. The Court will grant an order for a writ of restitution to vacate the premises that Mr. Moseley currently possesses.

So, [counsel for HMD], you can prepare that documentation, get it to my Court Administrator and I'll get it signed. But I won't make any findings on the Carters at this time because of what I said before and I can have you—we will have a continuation of that hearing to next week on the Carter issue. But the Court finds there's a sufficient factual basis and that this is a verified complaint, the belief is sufficient for this Court to find that the—and it's undisputed, Mr. Moseley lives on the premises, he's been served and it's in the complaint that he was served a notice. I don't have a copy of the notice, but at this point, the complaint does say that Mr. Moseley is not on the lease, which is uncontested; that he's residing on premises that he's not lawfully entitled to reside on; and that the Plaintiff is entitled to a writ of restitution. So, that's what I'm going to make a decision on today. Your Carter matter will continue till next week.

1 RP (Sept. 6, 2023) at 15-17. In light of the court's oral ruling, counsel for Moseley asked for a bond regarding the writ.

[COUNSEL FOR MOSELEY]: And, Your Honor, as far as the writ, I would request that the Court allow a bond regarding the writ.

THE COURT: What kind of bond? What are you asking for?

[COUNSEL FOR MOSELEY]: Your Honor, I'm not sure—so the Court is without the presence of a lease or presence of any notices finding that my client is unlawfully detaining the residence. My client is prepared to testify that he has purchased the trailer from the Carters, that he has a copy of a bill of sale from the Carters dated, I believe January 1st, 2021, as well as he has the title to the trailer signed by Ross Carter, also dated January 1, 2021. So, and based on that information, he's not unlawfully detaining the mobile home. Based on that information, it may be a violation

6

of a lease that the rights, the Carters have assigned the rights to the lease to Mr. Moseley, however, we don't have a copy of that lease to be able to determine whether it is a violation of the lease regarding that.

THE COURT: Well, yeah, Mr. Moseley doesn't have a lease with the owners, so he's unlawfully detaining the property. He does not have a lease, he's there in possession, unlawfully, with no lease, so the Plaintiff is entitled to a writ of restitution. I'm not going to order any bond. The Plaintiff owns the entire, I believe—does the Plaintiff own this trailer court, [counsel for HMD]?

[COUNSEL FOR HMD]: I believe so, yes. HMD Enterprises owns Sunset Mobile Home Park.

[COUNSEL FOR MOSELEY]: But not that specific trailer.

THE COURT: No, not that trailer. It doesn't own trailers. It owns the land that the trailers are on. So, it is entitled to a writ of restitution to require Mr. Moseley to vacate the premises. . . .

1 RP (Sept. 6, 2023) at 17-18.

On September 8, 2023, the court entered an order and judgment granting a writ

of restitution for HMD to take possession of the leasehold premises relative to Michael

Moseley. The court continued the hearing on the allegations related to the Carters.

On September 18, Moseley moved for reconsideration. In an accompanying

declaration, counsel for Moseley identified that the unlawful detainer complaint "failed to

include copies of a lease, notice(s) of rent increase(s), pre-eviction notice(s), ledger(s),

[or] mobile home park rules or regulations." CP at 51. Counsel further stated that no

evidence was presented to the court to support the allegations in the complaint, including

that HMD previously and lawfully held an interest in the possession of the property.

Counsel pointed out that, at the September 6 hearing, the court inferred that the Carters

7

did not live at the mobile home, then reserved all issues related to the Carters and continued the show cause hearing relative to the Carters. Moseley's counsel reiterated that he had requested, at the show cause hearing, that the eviction action be dismissed without prejudice due to the absence of evidence supporting HMD's complaint or, alternatively, that the hearing be continued to allow HMD to amend its complaint. Counsel pointed out that at the show cause hearing an offer of proof was made that Moseley was prepared to testify, among other things, that he purchased the mobile home from the Carters in January 2021. It was Moseley's position that "[d]espite [HMD] failing to provide the Court with <u>any</u> evidence, much less evidence that proved [HMD]'s requests by a preponderance of evidence, the Court granted [HMD]'s request for <u>restored</u> possession of the contested [mobile home]." CP at 51.

Moseley also submitted a declaration in support of reconsideration. Moseley stated that he and Ross Carter are friends. Ross Carter and Cheryl Carter started living in the mobile home sometime in 2012. Cheryl moved out in 2013, with the Carters divorcing in 2014, and Moseley thereafter moving in with Ross Carter. Ross Carter moved out in 2017. Moseley's two children moved in during August 2018, and all three have continued to reside at the mobile home. Moseley later produced, in the form of a vehicle certification of title and handwritten bill of sale, evidence that he had purchased the mobile home from Ross Carter in January 2021. In May 2021, Moseley paid a year's

worth of lot rent, through a cashier's check, to HMD, and paid rent to HMD in anywhere from 6- or 12-month installments. Moseley contended that the mobile home park manager during that time knew Moseley was occupying the mobile home and knew that the Carters did not live there. Moseley also averred that the current park manager, who verified the complaint for unlawful detainer, knew in early 2023 that Moseley lived in the mobile home on the lot.

HMD then submitted a supplemental declaration from the mobile home park manager that included a "Mobile Home Lot Rental and Lease Agreement" executed by the Carters on October 12, 2012. CP at 69-76. (some capitalization omitted). The lease agreement includes a provision for "Transfer of Rental Agreement upon the Sale of Mobile Home." CP at 70.

On October 11, 2023, the court entered an order denying the motion for reconsideration. An order and judgment granting a writ of restitution regarding Michael Moseley was entered on November 2, with the same language used in the September 8 order and judgment. An order and judgment granting a writ of restitution regarding the Carters was also entered by default on this date.

Moseley appeals,[1] arguing it was error to issue an order and judgment granting

a writ of restitution because HMD failed to provide sufficient evidence it gave notice

in accordance with RCW 59.20.080 and failed to provide sufficient evidence supporting

its claim.

ANALYSIS

A trial court's findings of fact in an unlawful detainer action are reviewed for

substantial evidence. *Tedford v. Guy,* 13 Wn. App. 2d 1, 12, 462 P.3d 869 (2020).

"Substantial evidence is evidence sufficient in quantum to persuade a fair-minded person

that a given premise is the truth." *Phillips v. Hardwick*, 29 Wn. App. 382, 387, 628 P.2d

506 (1981). Conclusions of law are reviewed de novo. *Tedford*, 13 Wn. App. 2d at 12.

*Evidentiary burden*

The plaintiff bears the burden of proving its right to possession of property by a

preponderance of the evidence. *FPA Crescent Assocs., LLC v. Jamie's LLC*, 190 Wn.

App. 666, 675, 360 P.3d 934 (2015); *see also Duprey v. Donahoe,* 52 Wn.2d 129, 135,

323 P.2d 903 (1958). At a minimum, this includes "establish[ing] . . . the tenancy . . .

and the terms thereof." *Gabalis v. Campbell*, 185 Wash. 387, 388, 55 P.2d 615 (1936);

---

[1] Only Moseley appeals from the trial court's orders. The Carters never appeared in the unlawful detainer action and are not parties on appeal. Issues related to the Carters are discussed in this opinion to the extent they are relevant to Moseley's assignments of error.

*see also Hous. Auth. v. Pleasant*, 126 Wn. App. 382, 392, 109 P.3d 422 (2005) (issuance of writ reversed and matter remanded for trial as landlord failed to establish violation of lease when it furnished "no competent evidence regarding the lease at all"); *Brewer v. Hill*, 25 Wn. App. 2d 844, 857-58, 525 P.3d 987 (2023) (dismissing unlawful detainer action when purported landlord failed to produce evidence that they had authority to grant a lease).

A fundamental requirement in an unlawful detainer action is that the plaintiff establishes its right to possession of the property. "A landlord bringing an unlawful detainer action has the burden or proving their right to possession by a preponderance of the evidence." *Hernandez v. France*, 29 Wn. App. 2d 777, 784-85, 544 P.3d 518 (2024). In the context of a mobile home park, RCW 59.20.030(7) defines "[l]andlord" or "owner" as "the owner of the mobile home park and includes the agents of the owner."

HMD's sole evidence presented at the September 6 show cause hearing that it was the owner of the property were allegations in the complaint for unlawful detainer, which was verified, as believed to be true, by an authorized agent of HMD. There were no exhibits to the complaint for unlawful detainer and damages, or any declarations authenticating exhibits. For example, no lease was submitted, nor were any documents showing rents paid or not paid, or a ledger. There were no copies of notices of rent increases. There was no documentation about park rules or tenant duties. There was no

11

documentary evidence, other than the allegations in the complaint, that the Carters engaged in disorderly or substantially annoying conduct that materially affected the health, safety, or welfare of other park residents and resulted in the destruction of rights of others to the peaceful enjoyment and use of the premises. Similarly, there was no information, other than a conclusory allegation in the complaint, that the Carters engaged in the unauthorized or illegal subletting of the leasehold premises or allowed an unauthorized occupant to reside on the leasehold lot. There was no documentation supporting the allegation in the complaint that the alleged unauthorized occupant engaged in unlawful or illegal criminal activity on the leasehold premises. Further, beyond the conclusory statements that the unauthorized occupant verbally harassed, threatened, physically assaulted, or caused bodily injury to management or property staff by tackling, biting, and punching, there was no specificity to the allegations offered, nor was there any documentation verifying the alleged occurrences. In addition, there were no notices of pre-eviction requests to quit or vacate, or any other pre-eviction notices that termination of the leasehold would to be sought.

Only after Moseley moved for reconsideration did HMD produce a lease. Within the lease, executed by Ross Carter and Cheryl Carter but not the landlord, there was a provision for the transfer of the rental agreement upon sale of the mobile home. As part of Moseley's motion for reconsideration, Moseley alleged and produced documentation

evidencing the sale of the mobile home by Ross Carter to Moseley in January 2021. In addition, Moseley declared that he paid money for rents to HMD for a period of years with no apparent issues.

After considering Moseley's motion for reconsideration without oral argument, the superior court entered an order on October 11, 2023, denying the motion, noting on the order that the "[m]otion [was] denied on [the] merits." CP at 120.

The Manufactured/Mobile Home Landlord-Tenant Act (MHLTA), chapter 59.20 RCW, requires that all lease agreements for mobile home lots be in writing, and that the failure of the landlord to obtain a written rental agreement shall deem the term of tenancy to be for one year. RCW 59.20.050(1). It is not clear what landlord-tenant relationship existed between HMD and Moseley. Based on representations by Moseley, he purchased the mobile home from Ross Carter and paid money for rents to HMD for a period of years.

In its unlawful detainer complaint, HMD sought relief under the Residential Landlord-Tenant Act of 1973 (RLTA), chapter 59.18 RCW. Based on this, it is presumed HMD acknowledges that there was some landlord-tenant relationship between HMD and Moseley. HMD chose to pursue relief through the RLTA. In doing so, this court now reviews whether the appropriate statutory steps under the RLTA were taken by HMD relative to Moseley.

Moseley admitted he did not have a written lease agreement, and HMD did not produce a lease to the relevant mobile home lot by the time of the September 6 show cause hearing. HMD's failure to comply with RCW 59.20.050 raises significant questions about the validity of the tenancy and HMD's right to terminate the tenancy. The superior court did not address this issue beyond commenting: "Well, yeah, Mr. Moseley doesn't have a lease with the owners, so he's unlawfully detaining the property. He does not have a lease, he's there in possession, unlawfully, with no lease, so [HMD] is entitled to a writ of restitution." 1 RP (Sept. 6, 2023) at 18.

The requirement of a written lease agreement for a mobile home lot helps protect a tenant by ensuring clarity in the terms of the tenancy. This ensures that a landlord, like HMD, does not unilaterally impose terms or claim a breach of those terms in an unlawful detainer action that are beyond the agreement. Assuming it is true that Moseley paid rents to HMD and those rents were accepted, then a one-year tenancy is presumed, and HMD would need to comply with the MHLTA's termination procedures, including proper notice to end the tenancy, to properly secure a writ of restitution.

*Pre-eviction notices*

Because unlawful detainer actions are summary proceedings, strict compliance with statutory requirements is mandated. *See Hous. Auth. v. Terry*, 114 Wn.2d 558, 563, 789 P.2d 745 (1990).

14

The MHLTA governs how mobile home tenants are to be treated. Leases may be terminated only for the bases set forth in RCW 59.20.080. This statute prohibits a mobile home park owner from evicting a tenant or an occupant unless a cause exists as stated in RCW 59.20.080, which outlines the grounds for termination and the required notice periods. "The landlord shall state in any notice of eviction required by RCW 59.20.080(1) as now or hereafter amended the specific reason for eviction in a clear and concise manner." RCW 59.20.150(3).

According to HMD's complaint for unlawful detainer, the notice to quit and vacate to Moseley cited "RCW 59.12.030(6) and/or RCW 59.20.080(1)(f)," but the complaint did not offer any specific reason or occurrence leading to the notice beyond the general allegations that Moseley's occupancy was without "color of title" and that he had been engaging in "criminal activity." CP at 9. The complaint also alleged that the notice to quit and vacate was served on June 13, 2023, with Moseley thereafter failing to vacate the leasehold premises and the mobile home lot. Without knowing the actual contents of the notice to quit and vacate, it could not be known at the show cause hearing whether the requisite period to cure the alleged deficiencies was afforded to Moseley. *See IBF, LLC v. Heuft*, 141 Wn. App. 624, 633, 174 P.3d 95 (2007); *see also Cmty. Invs., Ltd. v. Safeway Stores, Inc.*, 36 Wn. App. 34, 37-38, 671 P.2d 289 (1983). Similarly, it was not known

15

what, if any, specific reason for eviction was stated, or not, in the notice and whether that was specified in a clear and concise manner.

Under the MHLTA, an "occupant" is defined as "any person, including a live-in care provider, other than a tenant, who occupies a mobile home, manufactured home or park model and mobile home lot." RCW 59.20.030(18). It could be presumed, based on this action being initiated and litigated though a complaint for unlawful detainer, that HMD is operating under the assumption that it had a landlord-tenant relationship with Moseley. Arguably, however, Moseley could be considered an "occupant." Even if considered an occupant, HMD still needed to comply with the MHLTA.

Unlawful detainer provisions and procedures generally do not apply to mobile home tenancies. *See* RCW 59.20.040. For a mobile home lot tenancy, pre-eviction service of notices is partially covered by the unlawful detainer statute, chapter 59.12 RCW, but "only in implementation of the provisions of [the MHLTA] and not as an alternative remedy to [the MHLTA] which shall be exclusive where applicable." RCW 59.20.040. For mobile home lot tenancy, the notice process is similar to RCW 59.12.040, but does not permit leaving the notice with a person of suitable age and discretion when the tenant is absent from the premises. *See* RCW 59.20.150.

According to the declarations of service, HMD's eviction summons and complaint for unlawful detainer and damages were personally delivered to Moseley, not only for

service on Moseley but also for service on Ross Carter and Cheryl Carter.[2] There were no

pre-eviction notices before the superior court at the show cause hearing. In the complaint

for unlawful detainer, it was alleged that a notice to quit and vacate was served upon

Moseley on June 13, 2023.[3]

*Show cause hearing*

"At or after the filing of a complaint for unlawful detainer, the plaintiff may

request an order for the defendant to show cause why the court should not issue a writ

of restitution." *Brewer*, 25 Wn. App. 2d at 853. "[T]he proper procedure by which a trial

court should conduct an RCW 59.18.380 show cause hearing is as follows: (1) the trial

court must ascertain whether *either* the defendant's written or oral presentations

potentially establish a viable legal or equitable defense to the entry of a writ of restitution

and (2) the trial court must then consider sufficient admissible evidence (including

testimonial evidence) from parties and witnesses to determine the merits of any viable

asserted defenses." *Leda v. Whisnand*, 150 Wn. App. 69, 83, 207 P.3d 468 (2009).

"A tenant who raises a viable legal defense, either in written submissions or during the

---

[2] Service on the Carters through personal service on Moseley did not comply with RCW 59.20.150(1).

[3] Appended to HMD's brief in response to the motion for reconsideration are unauthenticated copies of two notices dated June 8, 2023: (1) a three-day notice to quit and vacate directed to Michael Moseley, and (2) a twenty-day notice to comply or vacate directed to Ross Carter and Cheryl Carter. *See* CP at 103-14.

show cause hearing, is entitled to testify in support of that defense and to present other witnesses as well." *Country Manor MHC, LLC, v. John Doe Occupant*, 176 Wn. App. 601, 612, 308 P.3d 818 (2013).

Mobile home lot tenancies are subject to RLTA show cause proceedings. *See* RCW 59.20.040 ("RCW 59.18.055 . . . [and RCW] 59.18.370 . . . shall be applicable to any action of forcible entry or detainer or unlawful detainer arising from a tenancy under the provisions of [the MHLTA], except when a mobile home, manufactured home, or park model or a tenancy in a mobile home lot is abandoned.") The RLTA requires landlords to serve a written termination notice, with that notice containing "facts and circumstances" supporting the cause for termination "with enough specificity so as to enable the tenant to respond and prepare a defense to any incidents alleged." RCW 59.18.650(6)(b). A landlord may initiate an unlawful detainer action only after a holdover tenant has failed to comply with the terms of a valid eviction notice. *See Randy Reynolds & Assocs., Inc. v. Harmon*, 193 Wn.2d 143, 156, 437 P.3d 677 (2019).

At a show cause hearing, once a defendant asserts a legal or equitable defense to the complaint, the court is obligated to examine the parties and decide whether the case should proceed to trial or whether the landlord is entitled to a writ of restitution on the merits of the complaint and answer. RCW 59.18.380. "A show cause hearing must be meaningful, as it is the first (and sometimes the only) step of the eviction process in

which the tenant is able to participate." *Faciszewski v. Brown*, 187 Wn.2d 308, 321, 386 P.3d 711 (2016).

> The show cause hearing is a "summary proceeding[] to determine the issue of possession pending a lawsuit" and is not intended to finally determine the parties' rights. *Carlstrom v. Hanline*, 98 Wn. App. 780, 788, 990 P.2d 986 (2000). The court may grant a landlord's request for a writ of restitution only if "there are no substantial issues of material fact regarding possession," and it is clear that the landlord's right to possession should be restored. *Garrand* [*v. Cornett*], 31 Wn. App. 2d [428,] . . . 438[, 550 P.3d 64 (2024)]; *see also* RCW 59.18.380.

*Liverpool LLC v. Farley*, 33 Wn. App. 2d 568, 576, 563 P.3d 457 (2025) (first alteration in original). RCW 59.18.380 refers to "the [show cause] hearing on the motion for a writ and provides that the court shall ascertain the merits of the complaint and answer, and that the court shall either deny the motion or order the issuance of a writ." *Tedford*, 13 Wn. App. 2d at 11. "If there are genuine issues of material fact regarding possession or defenses raised by the tenant, the court sets the matter for trial." *Id.* citing RCW 59.18.380.

Here, pursuant to RCW 59.18.380, once Moseley's counsel potentially established a viable defense to the unlawful detainer complaint at the show cause hearing,[4] the court was required to consider sufficient admissible evidence, including examination of the

---

[4] Counsel argued that the allegations in the complaint regarding a lease and pre-eviction notices served on Moseley were not supported by any documentary or testimonial evidence, and verification of the complaint by an agent for the plaintiff was deficient, calling into question the validity of the plaintiff's claims.

19

parties and any witnesses to ascertain the merits of the complaint and Moseley's defense. *See Leda*, 150 Wn. App. at 82-83. In this case, the court erred by failing to conduct a meaningful hearing as required by RCW 59.18.380. No party was examined at the September 6 hearing and no evidence was considered beyond the allegations in the verified complaint. No inquiry was made into Moseley's asserted defenses. Moseley's counsel raised issues with the proceedings, with those issues not being followed up on by the court. *See Hernandez v. France*, 29 Wn. App. 2d 777, 787-88, 544 P.3d 518 (2024). We cannot determine whether there are potentially viable defenses because the record from the show cause hearing is devoid of testimony and evidence. The matter must be addressed on remand.

## APPELLATE ATTORNEY FEES

Both parties request the award of attorney fees and costs pursuant to RAP 18.1 and RCW 59.20.110. While applicable law allows the prevailing party to recovery attorney fees, neither party has yet prevailed on the merits of the case. Whichever party ultimately prevails on remand may request attorney fees, to include fees and costs associated with their appeal. *See Kiemle & Hagood Co. v. Daniels*, 26 Wn. App. 2d 199, 226-27, 528 P.3d 834 (2023).

CONCLUSION

The order and judgment granting issuance of the writ of restitution is reversed.

This matter is remanded for further proceedings.

A majority of the panel has determined this opinion will not be printed in

the Washington Appellate Reports, but it will be filed for public record pursuant to

RCW 2.06.040.

_____
Murphy, J.

WE CONCUR:

_____
Staab, A.C.J.

_____
Fearing, J.